MOORE, County Treasurer, v. OTIS et al.

(Circuit Court of Appeals, Eighth Circuit. October 4, 1921.)

No. 5661.

1. **Constitutional law** ⊂⇒143—**Municipal corporations** ⊂⇒955(1)—**Law providing for diversion of funds and discharge of existing assessments held unconstitutional, warranting injunction against enforcement at suit of holders of municipal bonds.**

Holders of municipal bonds issued for payment of street improvements under Sess. Laws Okl. 1907–08, c. 10, art. 1, payable in 10 annual installments from a fund created from assessments against improvement district property, made a lien on the property continuing until assessments and interest were paid, *held* entitled to injunction against the enforcement of Rev. Laws Okl. 1910, §§ 7411, 7412, as amended by House Bill 29 (Laws Okl. 1919, c. 130), approved April 5, 1919, providing in effect that such portions of the moneys received, upon resale by the county of property bid in at previous sale, as represented special assessment taxes, should be appropriated to the county common school fund, and that the issuance of a deed at the resale should have the effect of canceling existing assessments; such change in the law impairing the obligations of the bondholders' contract, and depriving them of valuable contract rights.

2. **Constitutional law** ⊂⇒47—**Validity of statute tested by what may be done under it.**

The constitutionality of a law is to be tested, not by what has been done, but by what may be done, under it.

3. **Constitutional law** ⊂⇒143—**Existing laws part of municipal bond contract.**

The laws existing at the time of the issuance of municipal bonds, and under the authority of which they are issued, enter into and become a part of the contract in such a way that the obligation of the contract cannot thereafter be in any way impaired, or its fulfillment hampered or obstructed, by a change in the law.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Courts ⊙⟫369(3)—In protecting contract rights, decisions of state courts not necessarily followed.**

In protecting contract rights, such as rights of holders of municipal bonds, the federal courts do not follow state court decisions, if they impair vested rights guaranteed by the federal Constitution.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; R. L. Williams, Judge.

Suit by Charles A. Otis and others, doing business under the firm name and style of Otis & Co., against Cecil Moore, County Treasurer of Muskogee County, Okl. From a decree for complainants, respondent appeals. Affirmed.

Robert E. Jackson, of Muskogee, Okl., P. E. Gumm, of Boynton, Okl., and W. A. Green, of Muskogee, Okl., for appellant.

D. M. Tibbetts, of New York City, and Fred W. Green, of Guthrie, Okl., for appellees.

Before CARLAND and STONE, Circuit Judges, and MUNGER, District Judge.

CARLAND, Circuit Judge. Action by appellees to enjoin appellant from enforcing sections 7411 and 7412 of the Revised Laws of Oklahoma, 1910, as amended by sections 5 and 6 of House Bill 29 of the Oklahoma Legislature approved April 5, 1919 (Laws 1919, c. 130). The trial court granted the relief prayed for. The appellees are holders of bonds issued by the city of Muskogee, Okl., to pay the cost of street improvements. Chapter 10, art. 1, Session Laws Okl. 1907–08.

This act provided that the bonds as issued should bear interest at the rate of 6 per cent. per annum, should be payable in 10 annual installments on the 1st day of September of each year, and should be payable out of the fund to be created by levying assessments against property within improvement districts required to be created; the property being assessed according to the benefits. The assessments for the payment of bonds were required to be made by ordinance upon the completion of the work and ascertainment of the cost thereof. If the assessments so made were not paid in full within a limited time, the act provided that they should be payable, together with interest, in 10 annual installments, maturing on the 1st day of September each year. The guaranties which surrounded the holders of the bonds by virtue of the law in force at the time the bonds were issued were as follows: Chapter 10 of the Session Laws of 1907–08, provided in section 5 thereof that:

"Such special assessments and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the dates of the ordinances levying the same, coequal with the lien of other taxes, and prior and superior to all other liens against such lots or tracts, and such lien shall continue until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty."

It was further provided in section 6 that it should be the duty of the city clerk of the municipality to collect the installments as they fell due, and as to the disposition of such funds it was provided:

⊙⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"It shall be the duty of the city clerk to keep an accurate account of all such collections by him made, and to pay to the city treasurer daily the amounts of such assessments collected by him, and the amounts so collected and paid to the city treasurer shall constitute a separate special fund to be used and applied to the payment of such bonds and the interest thereon and for no other purpose."

Section 6 also provided that, in the event of any installments becoming delinquent, the city clerk should, on or before September 15th of each year--

"certify said installment and interest then due to the county treasurer of the county in which said city is located, which installment of assessment and interest shall be by said county treasurer placed upon the delinquent tax list of said county for the current year and collected as other delinquent taxes are collected, and thereupon pay to the city treasurer for disbursement in accordance with the provisions of this act."

The tax sale law in force at that time was substantially the same as that contained in article 9, c. 72, Revised Laws of Oklahoma, of 1910. By virtue of the provisions of article 9, c. 72, of the Revised Laws 1910, and section 6, c. 10, of the Session Laws 1907-08, it was the duty of the county treasurer in November each year to hold a tax sale, at which properties upon which there existed delinquent special assessment taxes for the current year, and delinquent ad valorem taxes for the previous year, should be offered for sale, and the property affected sold for both classes of taxes at such sale. At the annual sale, the property was required to be sold to the person who offered to pay the amount due on any parcel of land, for the smallest portion of the same. Section 7399. It was then provided by section 7406 that the county treasurer might bid off all property at such sale for the amount of taxes, penalty, interest, and costs due and unpaid thereon in the name of the county, in the event no other bidders offered the amount due, the county thereupon acquiring all the rights, both legal and equitable, that any other purchaser could acquire by reason of such purchase. There was no provision, however, that the county should pay anything for the property so taken over. By section 7407, a redemption period of two years was provided for, during which any person having an interest in the property, had the privilege of making redemption, by paying the county treasurer the amount of all taxes, penalty, interest, and cost of sale up to the date of redemption. By virtue of section 7408 any person was permitted to purchase the interest of the county and take an assignment of that interest upon paying to the county treasurer the amount of the taxes, penalty, interest, and cost of sale and transfer up to the date of the transfer. It was also provided that any person holding a tax sale certificate, either by purchase at the original sale, or by taking the assignment of the county's interest, might, after a period of two years, upon proper notice as specified by the statute, acquire a tax deed to the property.

This deed in terms conveyed to the purchaser of the property "in as full and ample manner as said treasurer of said county is empowered to sell the same." The same act provided that in cases where the county had taken over the property and held it for a period of two years or more, a resale might be had at which the property so offered

should be sold to the highest bidder for cash. At such resale, the property was disposed of to the highest bidder for cash, and this, no doubt, had the effect, upon a valid sale, of cutting off the interest of the owner of the property and any liens junior to the tax for which the property was sold, and such title was passed to the highest cash bidder as the purchaser, but the amount so realized was subject to distribution as has been indicated. Under this act, there were no express provisions as to what liens or rights in the property should be cancelled. This was the situation when the bonds were purchased. House Bill 29 provides:

"Section 5. That section 7411, of chapter 72, of article 9, of the Revised Laws of the State of Oklahoma, 1910, be and the same is hereby amended to read as follows:

" 'Section 7411. On the day said real estate is advertised for resale the county treasurer shall, between the hours of 1 o'clock and 4 o'clock p. m. at his office, where, by law, the taxes are made payable, sell at public auction to the highest bidder for cash each tract or lot of land so advertised, and then in case there be no other bidder for any real estate so offered for sale, the county treasurer shall bid off the same in the name of the county for the amount of taxes, penalty and costs due thereon and shall issue deed therefor in the name of the chairman of the board of county commissioners and his successors in office for the use and benefit of the county, and thereafter said property shall be exempt from assessment for ad valorem taxes so long as title is held for the county: Provided that in no event shall the county be liable to the state or any taxing district thereof or to any special assessment lien holder for any part of the amount for which any such property may be sold. Any property acquired by the county under the provisions of this section may be sold by the treasurer at such price as may after notice by publication be approved by the board of county commissioners. Said notice of publication shall be given by the treasurer in the official county paper and shall embrace a description of the property, the price and to whom proposed to be sold, and stating that he will on a given date to be stated in the notice apply to the board of county commissioners for its approval of said sale and for an order directing that deed for said property be executed by the chairman of said board. The proceeds of sale of any property acquired by the county under the provisions hereof shall accrue to the common school fund of the county.'

"Section 6. That section 7412, of chapter 72, of article 9, of Revised Laws of the State of Oklahoma, 1910, as amended by section 1, of chapter 47, Session Laws 1915, be and the same is hereby amended to read as follows:

" 'Section 7412. Within ten (10) days after such resale the county treasurer shall file in the office of the county clerk a return of his resale of such real estate, and retain a copy thereof in his office, which return must show the real estate so sold, the name of the purchaser and the price paid by him therefor, also a copy of the notice of such resale with an affidavit of its publication or posting, and such notice and return shall be presumptive evidence of the regularity, legality, and validity of all the official acts leading up to such resale. And within said ten (10) days the county treasurer shall execute, acknowledge and deliver to the purchaser or his assigns a deed conveying the real estate thus resold, which deed shall expressly cancel and set aside all taxes, penalties, and interest and costs previously assessed or existing against said real estate, including paving taxes and outstanding tax sale certificates, and such deed shall vest in the purchaser and grantee of said real estate an absolute and perfect title in fee simple to said land, and that where there are both ad valorem and special taxes due, the county treasurer must advertise and sell for all taxes in the same sale, and such deed shall contain a summary statement of the matters and proceeding of such resale, and six (6) months after said deed shall have been filed for record in the county clerk's office, no action shall be commenced to avoid or set said deed aside.

" 'Any number of lots or tracts of land may be included in one deed for which deed the treasurer shall collect from the purchaser one dollar ($1.00) for the first tract and ten (10) cents for each additional tract included there-

in. The treasurer shall also charge and collect from the purchaser at such sale the sum of twenty-five (25) cents on each tract of real property and fifteen (15) cents on each town lot so advertised and sold for the cost of publishing said notice of sale, which sum shall be paid into the county treasury and the county shall pay the cost of publishing such notice of resale.

"'And any tract or lot of land sells for more than the taxes, penalties, interest and costs due thereon, the excess shall be turned into the county treasury and there be held for the prior owner of such land to be withdrawn any time within two (2) years, and at the end of two (2) years if the same is not withdrawn or collected from the county treasurer the same shall be turned into the county sinking fund.'"

[1, 2] We do not notice the provision fixing the time within which the sale must be held as perhaps that is subject to regulation but we call attention to the provisions of section 5 by which it is evident that the Legislature intended to appropriate such portions of the moneys received upon the proposed resale as represented special assessment taxes for the benefit of the county or the common school fund. It would seem that there is no way by which the bondholder could protect himself against such disposition of the sale money if the law is to be enforced. Under the provisions of section 6, it is provided that the issuance of a deed to the purchaser at the resale shall have the effect to cancel all assessments previously existing against the property sold, which would cancel the assessment provided for and levied at the time the bonds in question were issued. To pay the bonds there is only one assessment payable in ten annual installments and this deed if the later law shall be enforced would cancel not only delinquent installments but installments thereafter accruing.

In this connection it is proper to say that the constitutional validity of a law has to be tested not by what has been done under it but what may by its authority be done. Montana Co. v. St. Louis, etc., Co., 152 U. S. 170, 14 Sup. Ct. 506, 38 L. Ed. 398. One public official may construe the law a certain way and another in a different way, but the courts only look to what may be done by any public official under a fair construction of the law. The law under which appellees obtained the bonds expressly guaranteed to them in our opinion an equality of liens with other taxes and also that such liens should continue to exist until the bonds were fully paid. We agree that the rights thus guaranteed to the holders of the bonds by the laws under which they were issued are valuable rights and that sections 5 and 6 of the act of 1919 would deprive the holders of the benefits thereof.

[3] The laws existing at the time of the issuance of the bonds and under the authority of which they were issued, enter into and become a part of the contract in such way that the obligation of the contract cannot thereafter be in any way impaired or its fulfillment hampered or obstructed by a change in the law. Wolff v. New Orleans, 103 U. S. 358, 26 L. Ed. 395; Ft. Madison v. Ft. Madison Water Co., 134 Fed. 214, 67 C. C. A. 142; Hicks v. Cleveland, 106 Fed. 459, 45 C. C. A. 429; City of Austin v. Cahill, 99 Tex. 172, 88 S. W. 542, 89 S. W. 552; Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. Ed. 1161; Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793; Louisiana v. New Orleans, 102 U. S. 203, 206, 26 L. Ed. 132; Rolls Co. Court v. U. S.,

105 U. S. 733, 26 L. Ed. 1220; Louisiana v. Pilsbury, 105 U. S. 278, 26 L. Ed. 1090; Gibbons v. Hood River Irr. Dist., 66 Or. 208, 133 Pac. 772; Oatman v. Bond, 15 Wis. 22; Barker v. Muchlin, 55 Wash. 411, 104 Pac. 637; Goodale v. Fennell, 27 Ohio St. 426, 22 Am. Rep. 321; Ogden v. Saunders, 12 Wheat. 213–302, 6 L. Ed. 606; McCracken v. Hayward, 2 How. 608, 11 L. Ed. 397; Curran v. State of Arkansas, 15 How. (U. S.) 304, 14 L. Ed. 705; Planters' Bank v. Sharp, 6 How. 327, 12 L. Ed. 447; Von Hoffman v. City of Quincy, 4 Wall. 535, 18 L. Ed. 403; Mobile v. Watson, 116 U. S. 305, 6 Sup. Ct. 398, 29 L. Ed. 620.

[4] We are referred to the cases of Ledegar v. Bockoven, 77 Okl. 58, 185 Pac. 1097, and State ex rel. Gulager v. Cecil Moore, County Treasurer, 78 Okl. 164, 189 Pac. 511. We do not think the law complained of is susceptible of the construction placed upon it in the case first cited, nor do we think the bondholder can be forced to the remedy by mandamus to maintain his rights. The Gulager Case related to delinquent ad valorem taxes and is not in point. Appellant has cited many cases involving the power of taxation by the states, but in the case at bar it is contract rights which are involved, not those of taxation. In protecting contract rights in cases like the present the federal courts do not follow the decisions of the state courts if they impair vested rights guaranteed by the federal Constitution. Taylor v. Ypsilanti, 105 U. S. 60, 26 L. Ed. 1008; Pleasant Township v. Ætna Life Ins. Co., 138 U. S. 67, 11 Sup. Ct. 215, 34 L. Ed. 864; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. 228; U. S. ex rel. Pierce v. Cargill (C. C. A.) 263 Fed. 857.

The decree below enjoined appellant from selling under said sections 5 and 6 any of the lots or tracts upon which unpaid special assessments for street improvements constituted all or a component part of the taxes due and upon which appellees had a lien. We think the pleadings and proofs clearly authorized this relief.

Affirmed.