CITY OF CLINTON, OKL., ex rel. SCHUET-
TER, v. FIRST NAT. BANK IN CLIN-
TON, OKL., et al.

Civ. No. 66.

District Court, W. D. Oklahoma.

July 18, 1941.

Henry G. Snyder and Walter A. Lybrand, both of Oklahoma City, Okl., and W. R. Banker, of Muskogee, Okl., for plaintiff.

Meacham, Meacham & Meacham, G. C. Loving, Arney & Barker, and R. H. Dunn, all of Clinton, Okl., and Jones & Wesner, of Cordell, Okl., for defendants.

George H. Shirk and Arnold T. Fleig, both of Oklahoma City, Okl., amici curiae.

VAUGHT, District Judge.

This opinion applies in part, also, to cases Numbers 192, 244, 258, 373, 435, 442, 519, 535, 539, 563, 575, 578, 583, 589, 599,

607, 608, 609, 614, 615, 617, 618, 620, 622, 627, 631, 632, 634, 642, 646, 694, and 695, now pending in this court. In all of these cases, suits have been filed in the name of the respective cities by and for the benefit of the bondholders owning paving bonds issued by the various cities named, for various street improvement or paving districts. The paving bonds were issued under the 1923 Act, Chap. 173, S.L.1923, 11 Okl.St.Ann. Chap. 3, § 81 et seq.

The various defendants have raised three main questions. The first question is applicable to all of the cases and the second and the third are applicable to certain of the cases. In order to facilitate the final disposition of these cases, all of the general matters in controversy are included in this opinion.

In all of these cases the defendants have pleaded the statute of limitations and, in support thereof, contend that, since the annual assessments have been delinquent for more than three years and no action in foreclosure had been instituted until three years after the tenth and final annual assessment had become delinquent, no action to enforce the payment of the bonds by foreclosure would lie since such action is barred by the statute of limitations.

These various bond issues were dated from January 5, 1924, to and including April 28, 1929, and the bonds were issued and the assessments levied to retire the bonds under the 1923 Act, supra. An examination of the 1923 Act, therefore, is necessary. Section 101 designates the property chargeable with the cost of paving improvements and provides for the apportionment of the costs. Section 103 is the important section in the consideration of these questions and is as follows: "Assessments in conformity to the appraisement and apportionment as corrected and confirmed by the governing body of such city or town, shall be payable in (10) equal annual installments, and shall bear interest at the rate of seven per cent (7%) per annum until paid, payable in each year at such time as the several installments are made payable. The governing body of said city or town shall, by ordinance, levy assessments in accordance with said appraisement and apportionment, as so confirmed, against the several lots and tracts of land liable therefor. Said ordinance shall provide that the owners of the property so assessed shall have the privilege of paying the amounts of their respective assessments without interest within thirty (30) days from the date of the publication of such ordinance. Such special assessments, and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the date of the publication of the ordinance levying the same, co-equal with the lien of other taxes and prior and superior to all other liens against such lots or tracts of land, and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty. (Laws 1923, ch. 173, p. 285, § 23.)" Section 105 provides for the dates of payment of the assessments, interest, et cetera. Section 107 provides for the enforcement of the collection of assessments by legal action.

Section 103 makes the assessments and interest thereon a lien against the lots and tracts of land so assessed coequal with the lien of other taxes, and provides: "* * * and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid."

This act was construed by the Supreme Court of Oklahoma in Perryman v. City Home Builders, 121 Okl. 150, 248 P. 605, 606. The second and third paragraphs of the syllabus are as follows:

"Holders of municipal bonds issued for payment of street improvements under Session Laws Oklahoma 1907-08, c. 10, art. 1, payable in ten annual installments from a fund created from assessments against improvement district property, have a lien on the property continuing until assessments and interest are paid.

"The laws existing at the time of the issuance of municipal bonds, and under the authority of which they are issued, enter into and become a part of the contract in such a way that the obligations of the contract cannot thereafter be in any way impaired or its fulfillment hampered or obstructed by a change in the law."

In the foregoing opinion the court reviewed the paving laws of Oklahoma prior to the adoption of the 1923 Act, emphasized the principal features of the prior acts which were carried forward into the 1923 Act, and held that the lien created by the assessments for the payment of the paving

bonds *continues until such assessments and interest thereon are fully paid.*

In Moore v. Otis et al., 275 F. 747, 751, the Circuit Court of Appeals, Eighth Circuit, in passing upon the Oklahoma statute, said:

"The law under which appellees obtained the bonds expressly guaranteed to them in our opinion an equality of liens with other taxes and also that such liens should continue to exist until the bonds were fully paid. * * *

"The laws existing at the time of the issuance of the bonds and under the authority of which they were issued, enter into and become a part of the contract in such way that the obligation of the contract cannot thereafter be in any way impaired or its fulfillment hampered or obstructed by a change in the law."

This case is cited with approval by the Supreme Court of Oklahoma in McGrath v. Oklahoma City, 156 Okl. 34, 9 P.2d 711.

■ The status of the bonds and the provision that the liens of the assessments levied to pay same should continue until the bonds were fully paid, were fixed by the statutes of the state and the construction placed thereon by the highest court of the state, *at the time the bonds were issued.*

The defendants contend that the decision of the State Supreme Court rendered March 4, 1941, in the case of Board of Education of Duncan, Okl. v. Johnston, Okl.Sup., 115 P.2d 132, not yet reported [in State Report], supports their theory that these actions are barred by the statute of limitations.

It was evidently the intention of the Oklahoma Supreme Court that such ruling should not have application to property other than that owned by municipal corporations, or branches of the sovereignty, where the assessments must be raised by general taxes. Even then such decision may not impair the contractual rights of bondholders, because not only the statutes as they existed at the time the bonds were issued, but also the judicial construction then placed upon such statutes became a part of such bond contract.

The rule is stated in Board of Education of Town of Carmen, Okl., et al. v. James, 10 Cir., 49 F.2d 91, 96, thus: "The validity of municipal bonds arising in a suit in a federal court will be determined by the law as judicially declared by the highest court of the state when the bonds were issued, and the rights and obligations of the parties, which accrued under such a state of the law, will not be affected by a different course of judicial decisions subsequently rendered, any more than by subsequent legislation. Douglass v. County of Pike, 101 U.S. 677, 25 L.Ed. 968; Wilkes County v. Coler, 180 U.S. 506, 531, 21 S. Ct. 458, 45 L.Ed. 642; Id., 190 U.S. 107, 23 S.Ct. 738, 47 L.Ed. 971; Loeb v Columbia Township, Trustees, 179 U.S. 472, 490-493, 21 S.Ct. 174, 45 L.Ed. 280; First National Bank v. Obion County (D.C. Tenn.), 3 F.(2d) 623, 627; Thompson v. Perrine, 103 U.S. 806, 26 L.Ed. 612."

The same rule was stated in Douglass v. County of Pike, cited in the above case, as follows at page 686 of 101 U.S., 25 L.Ed. 968: "As a rule, we treat the construction which the highest court of a State has given a statute of the State as part of the statute, and govern ourselves accordingly; but where different constructions have been given to the same statute at different times, we have never felt ourselves bound to follow the latest decisions, if thereby contract rights which have accrued under earlier rulings will be injuriously affected."

■ At the time the bonds here under consideration were issued, the Oklahoma Supreme Court had held that the lien of the assessments for street improvements "shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid," as the statute itself states. The above cited cases construing such statute held that it meant just what it said. This became a rule of property which may not be affected by later decisions.

No cases have been cited from other states, holding the statute of limitations applicable where said statutes have a parallel provision to that of Oklahoma, namely, that the lien of the assessments and each installment thereof shall continue until paid, except from states where the statute of limitations specifically includes the lien of taxes. Such cases from other jurisdictions, consequently, are not controlling on the question here involved.

■ A clear distinction has not been made in all of the briefs submitted, between the street improvements assessments and the street improvement bonds. Only the assessments constitute liens upon the real estate of the defendants. The money

realized from the collection of assessments constitutes a separate special fund for the purpose of paying the bonds and interest thereon, and it is only from this fund that the bonds can be paid. This fund may be accumulated in three ways: (1) By payment of the annual installments of the assessments to the city clerk before delinquency or to the county treasurer after delinquency; (2) by the county treasurer placing the delinquent installments upon the November delinquent tax list and collecting same by sale of the property, "as other delinquent taxes are collected;" or (3) by any holder of any street improvement bond prosecuting a suit, brought in the name of the city or town, to foreclose the lien of the assessments against the properties to satisfy the delinquent installments.

In Barnes et al. v. Turner et al., 14 Okl. 284, 78 P. 108, 10 L.R.A.,N.S., 478, 2 Ann. Cas. 391, (Duke v. Turner, affirmed, 204 U. S. 623, 27 S.Ct. 316, 51 L.Ed. 652, 9 Ann. Cas. 842) the syllabus reads: "The statute of limitations does not run in favor of a municipal or quasi municipal corporation, upon its outstanding obligations evidenced by warrants, until the corporation has provided a fund out of which payment of the same may be made." See Board of Com'rs of Greer County v. Clarke & Courts, 12 Okl. 197, 70 P. 206.

The Circuit Court of Appeals, Tenth Circuit, in Board of County Com'rs v. Board of Finance, etc., 100 F.2d 766, 769, appealed from this district, has announced the rule as follows:

"The individual defendants pleaded the five-year statute of limitations. § 185, C.O.S.1921, § 101, O.S.1931, 12 Okl.St.Ann. § 95.

"The bonds in suit were payable solely out of a special fund to be created by special assessments assessed and levied against lands in the drainage district. The law is well settled generally and in Oklahoma that where it is provided by law that municipal bonds or other municipal obligations shall be paid only out of a particular fund in a particular manner the statute of limitations does not begin to run until the particular fund has been provided. Denver-Greeley Valley Irr. Dist. v. McNeil, 10 Cir., 80 F.2d 929, 931; Board of County Commissioners of Greer County v. Clarke & Courts, 12 Okl. 197, 70 P. 206; City of Sulphur v. State, 62 Okl. 312, 162 P. 744; Barnes v. Turner, 14 Okl. 284, 78

P. 108, 10 L.R.A.,N.S., 478, 2 Ann.Cas. 391. And it is incumbent upon a party to plead and prove that the fund has been provided for the payment of the obligation in order for him to invoke the statute of limitations. See Board of County Commissioners v. Clarke & Courts, supra. In the instant case the fact that the fund had been provided was neither pleaded nor proved."

On the question of the applicability of the general statute of limitations, it appears quite evident that the Oklahoma Legislature considered there was no such general statute applicable to the foreclosure of street improvement assessments, because, in 1939 it passed Senate Bill No. 164, Chap. 33, Art. 6, S.L.1939, 11 Okl.St.Ann. § 242, wherein it imposed a three-year period from the maturity date of the bonds in which bondholders may bring such foreclosure actions, or be barred of such right. It would have been an idle gesture for the Legislature to have passed such a law if the general statute of limitations had been applicable to street improvement assessment foreclosures.

■ It is therefore apparent that under the laws, as they existed when the street improvement districts here under consideration were created, and as such laws had been construed at the time the assessments were levied and the bonds issued, there were no limitations upon the rights of the bondholders to bring foreclosure actions, and subsequent changes in the laws or in the decisions cannot impair said bondholders' rights in such regard.

The next question to be considered is whether the special statute of limitations enacted in 1939, supra, constitutes a good defense in favor of those defendants who have pleaded it, where the suit has been brought, or service perfected, since the effective date of such act.

■ It has been suggested that there is at this time a case pending in the Oklahoma Supreme Court to test the constitutionality of such act. Such fact ordinarily would cause this court to hold this question in abeyance, unless it were shown clearly that such act violated the Constitution of the United States. From a careful study thereof, it is apparent that the 1939 Act does violate Section 10 of Article 1 of the Constitution of the United States, which provides: "No State shall * * * pass any * * * Law impairing the Obligation of Contracts."

Attention is called to Section 16 of the above mentioned 1939 Act, 11 Okl.St.Ann. § 242o, which states: "It is hereby declared to be the intention of the Legislature, in the enactment of this Act, that it be construed in its entirety; and that, if any part thereof is unconstitutional and void, the entire Act shall be void."

It will be unnecessary to go into the many ramifications of the 1939 Act to discover its unconstitutionality as applicable to street improvement bonds issued prior thereto. Its unconstitutionality is evident in the first paragraph of the first section, 11 Okl.St.Ann. § 242, which reads in part as follows: "From and after the effective date of this Act, the right of any holder to enforce the lien of any 'Street Improvement Bond' * * * by foreclosure, mandamus, refunding or otherwise, shall be barred upon the expiration of three years immediately following the maturity date named in the face of such bond, unless the holder of any such bond shall have commenced suit to foreclose his lien by filing an action for that purpose and procuring service of summons therein * * *; Provided, however, that in all cases where the period of limitation herein mentioned has expired or will expire prior to November 1, 1939, the holder of such bonds shall have until December 1, 1940, in which to pursue his remedy or obtain the benefits of this Act. The running of the period of limitation herein fixed shall be an absolute bar to any action or proceeding brought thereafter, whether the same is plead as a defense or not, and the property against which such bonds theretofore represented a lien shall thereafter be, by operation of law, *absolved of any lien or liability on account of said bonds.*" (Emphasis supplied)

It is fundamental that statutes of limitation go only to procedure and remedy, and cannot affect substantive rights. The above quoted provision does not stop with procedural remedies, but attempts to *"absolve"* the property of the taxpayer from "any lien or liability on account of said bonds," where the bondholder has not complied with the act by commencing suit to foreclose his lien, or has evidenced his willingness to accept "refunding" bonds before the effective date of the limitation period.

█ It must be remembered that the right of foreclosure by the bondholder is only a "cumulative remedy", as announced by the Oklahoma Supreme Court in Oklahoma City v. Vahlberg, 185 Okl. 28, 89 P.2d 962.

Even if there were a proper statute limiting the time within which a bondholder might bring an action to foreclose, and if such time had passed, the *lien* of the bondholder remains and his *other remedy* remains, that is, the remedy of having the property sold at a tax sale or a resale by the county treasurer to satisfy the street improvement lien.

Having held the 1939 Act inapplicable as a defense, it is not necessary to pass upon the controverted question as to whether the summons and complaint were served in time upon certain defendants.

The third general question raised is whether the sale of the properties at the county treasurer's tax sale and later at the resale, extinguishes the lien of the street improvement assessments, so that the bondholders may not sue to foreclose.

█ There is no question but that the land subject to street improvement assessments may be sold by the county treasurer at the regular November tax sale, and later at the resale, where the county, in the absence of other bidders, was the purchaser, to satisfy the delinquent installments of the street improvement assessments. See, Moore v. Otis, supra; Perryman v. City Home Builders, supra; Prince v. Ypsilanti Savings Bank, 140 Okl. 131, 282 P. 282; Criswell v. Hart et al., 155 Okl. 159, 8 P.2d 70; McGrath v. Oklahoma City, supra; Oklahoma City v. Vahlberg, supra.

█ The Oklahoma Supreme Court has held in a number of cases that only such installments of the street improvement assessments are extinguished, as were properly included in the county treasurer's original November tax sale, and in the resale. Prince v. Ypsilanti Savings Bank, supra; Criswell v. Hart, supra; McGrath v. Oklahoma City, supra; Oklahoma City v. Vahlberg, supra.

█ It therefore follows that the complainants in the cases here involved cannot recover judgment as to any installments which were properly included in an original tax sale, where the county was the purchaser, and thereafter sold at resale. If the parties herein cannot agree as to what installments were so properly disposed of by the county treasurer's resale, it will be necessary to have a trial upon the facts.

In this regard, the Oklahoma Court, on February 25, 1941, in Welborn et al. v. Whitney et al., Okl.Sup., — P.2d —[1] (petition for rehearing pending), held that a failure to publish the notice of sale, at an original sale or at a resale, for the statutory time, is an immaterial defect, therein reversing many former decisions.

In some of the cases here involved, the defendants have raised the defense of res judicata, alleging that peremptory writs of mandamus were issued by the state district courts compelling the city clerks to accept street improvement bonds in the respective paving districts in satisfaction of certain installments of the assessments, and since there were no appeals from such writs, same are binding upon the bondholders who are the relators in these actions.

All of such proceedings were predicated upon the validity and constitutionality of Chapter 58, S.L.1933, 62 Okl.St.Ann. §§ 341–346, which provided that any property owner who owned a special improvement bond in a district wherein he owned real estate subject to improvement assessments, could take said bond to the city clerk, or other collecting official as the case may be, and use said bond, or any part thereof, to pay the unpaid installments of such assessments, regardless of the numerical position of such bond.

In the case of Davis et al. v. McCasland, 182 Okl. 49, 75 P.2d 1118, the Supreme Court, on January 18, 1938, held said 1933 Act unconstitutional as impairing the obligations of the contract with the bondholders in street improvement districts because the bonds had been made payable in numerical order, and the assessments had been made payable in no other medium than cash by the law under which the bonds had been issued and the assessments levied to pay them.

It is assumed that all such mandamus actions, aforesaid, were completed before the date the above state court decision was rendered. The question then arises, what is the effect of a judicial decree rendered pursuant to the provisions of an unconstitutional statute?

12 C.J. sec. 232, p. 801, states: "Judgments and decrees rendered in the course of judicial proceedings under unconstitutional statutes are void, and should be reversed; * * *."

16 C.J.S., Constitutional Law, § 101, p. 290, after repeating the above rule, mentions that "other authority" holds such a judgment not void but merely voidable. It cites one Wisconsin case and two Oklahoma cases, Hanchett Bond Co. v. Morris et al., 143 Okl. 110, 287 P. 1025, and Jones v. McGrath, 160 Okl. 211, 16 P.2d 853, (hereinafter discussed), as announcing the latter rule. It then makes the following very pertinent statement: "* * * and if such judgment becomes final before the statute is declared unconstitutional, it is valid and binding and cannot be disturbed, unless it is void or voidable for some other reason, at least, where the court had jurisdiction of the parties and of the subject matter and had power to render the particular judgment."

Under the "for some other reason" statement, three Oklahoma cases are cited, one being the same as under the previous citation. An analysis of these four Oklahoma decisions convinces this court that they do not sustain the contentions of the defendants under the circumstances in the cases at bar.

The first is the case of Hanchett Bond Co. v. Morris et al., supra, wherein the syllabus announced the rule that "where proceedings have been regularly had under the law as it existed before such decision [holding the statute unconstitutional] they will not be disturbed," and the court held that where the action had not been completed when the act was held unconstitutional, and *all the parties were before the court*, relief should be granted from the unconstitutional act, and the trial court was affirmed in refusing to grant the plaintiff any relief under the act so held unconstitutional.

In the second case, Jones v. McGrath, supra, both the plaintiff and the defendant relied upon the Hanchett Bond case, supra, to sustain their positions. The plaintiff Jones had concluded a proceeding, under an act of the 1919 Legislature, Laws 1919, c. 200, 68 Okl.St.Ann. § 281 note, by which the amount of taxes and special assessments was determined, the property was sold to him, the money paid into court, the sale confirmed, and sheriff's deed issued to him. The county was a party defendant and did not raise the constitutionality of the act. Later, after said 1919 Act was held unconstitutional, the county treasurer ignored the sale under the above pro-

ceeding and sold the property at a resale to the defendant for the same taxes that had been the subject matter of the proceedings wherein the plaintiff had acquired title. The plaintiff had paid subsequent taxes on the property from 1921 to 1929. The defendant had purchased at resale for taxes from 1911 to 1920, which already had been paid according to the judgment against the county. The Supreme Court held the county treasurer was without power to sell at resale because the county was a party to the suit and was bound by the judgment, and it was impossible to make restitution to the first purchaser.

The third case is Walker v. Stubblefield et al., 167 Okl. 50, 27 P.2d 1043. Herein, also, both sides relied on the Hanchett Bond case, supra, as authority. The court held it a parallel case to Jones v. McGrath, supra, and it contains no different reasoning.

The fourth case, Casner et al. v. Meriwether, 152 Okl. 246, 4 P.2d 19, 28, was decided earlier than the cases of Jones v. McGrath, supra, and Walker v. Stufflefield, supra, but is here considered last because it differs greatly from the others. In the opinion on rehearing, the court referred to "* * * the well-established and generally recognized rule that final judgments based upon an act of the Legislature afterwards declared unconstitutional are not affected by the act of the court, and will remain valid and binding judgments unless void or voidable for some other reason," and then proceeded to show that no vested legal rights could have arisen under the act so held unconstitutional for the reason that: "* * * the act itself provided that no suit could be commenced sooner than two years after the tax sale and the act was repealed in 1927 within two years from the date any tax sale could have been held after its passage."

It is noted in the last case that an exception is made wherein it provides that the rule applies and judgments will be binding "unless void or voidable for some other reason."

It is the opinion of this court that none of the above four cases is applicable to the question under consideration for two reasons: (1) They do not involve the rights of parties not before the court, and (2) they do not involve statutes, the operation of which impaired the obligations of contracts created pursuant to the provisions of prior valid statutes.

In none of the cases at bar has it been alleged that the relators (the bondholders bringing the actions) were parties defendant in the mandamus actions. The defendants allege that the city clerk represented the bondholders, so that such mandamus actions are binding upon them. In City of Lawton v. West, 33 Okl. 395, 126 P. 574, 575, the Oklahoma Court held contrary to the defendants' contentions. Therein the court said: "The municipal corporation acts only as an intermediary or agent for the property holders whose property these public improvements benefit in arranging for the improvements, making the contracts, negotiating the bonds, and collecting the revenues from the party benefited and disbursing it to the holders of the securities."

A recent case announcing the same rule is Oklahoma City v. Vahlberg, supra [185 Okl. 28, 89 P.2d 965], wherein the court said: "The city is not the agent or representative of the bondholders in this action, so that it has the contractual rights of such bondholders. As to their own rights, the bondholders are the real parties in interest. Sec. 142, O.S.1931, 12 Okl. St.Ann. § 221."

It is a well-settled principle that judgments, decrees, and decisions cannot divest the rights of those who are not brought under the jurisdiction of the court, and particularly, decisions of state courts are not binding upon federal courts where they impair contract rights in violation of the United States Constitution.

In Moore v. Otis, supra, the fourth headnote reads: "In protecting contract rights, such as rights of holders of municipal bonds, the federal courts do not follow state court decisions, if they impair vested rights guaranteed by the federal Constitution."

In Fetzer v. Johnson et al., 8 Cir., 15 F. 2d 145, 153, certiorari denied, 273 U.S. 751, 47 S.Ct. 455, 71 L.Ed. 873, the court said: "A federal court of equity will, by its writ of injunction, deprive one 'of the benefit of a judgment obtained in a state court in circumstances where its enforcement will be contrary to recognized principles of equity and the standards of good conscience.' Wells Fargo & Co. v. Taylor, 254 U.S. 175, 183, 41 S.Ct. 93, 96 (65 L.Ed. 205)."

In Board of Education of Town of Carmen, Okl. v. James, supra, the Tenth Circuit Court of Appeals said: "Where municipal bonds have been issued and delivered, under the statute of a state, and thereafter the state courts have rendered decisions holding bonds issued under like circumstances to be invalid, a federal court is not bound by such state court decisions, and it is not only the right but the duty of such federal court, in passing upon the validity of such bonds, to exercise an independent judgment. Folsom v. Township Ninety-Six, 159 U.S. 611, 16 S.Ct. 174, 40 L.Ed. 278; Carroll County v. Smith, 111 U.S. 556, 4 S.Ct. 539, 28 L.Ed. 517; Burgess v. Seligman, 107 U.S. 20, 2 S.Ct. 10, 27 L.Ed. 359; Pine Grove Township v. Talcott, 19 Wall. 666, 22 L.Ed. 227; Mothersead v. United States F. & G. Co., [8 Cir.], 22 F.(2d) 644; Fetzer v. Johnson, [8 Cir.], 15 F.(2d) 145."

In Brown-Crummer Inv. Co. v. Paulter et al., 10 Cir., 70 F.2d 184, the fourth headnote reads: "Where taxpayer brought mandamus proceedings to compel county treasurer to accept principal and interest without statutory penalties and issue receipts in full and street improvement bondholder participated in argument as amicus curiæ but was not party to litigation, bondholder was not bound by judgment." In the opinion, the court said: "Appellant herein advised with the County Treasurer in that litigation in advance of trial, participated in the argument as amicus curiæ, and advised an appeal which was not taken. Appellant was not a party to the litigation, had no control over it, and is not bound by the judgment. City of Shidler v. H. C. Speer & Sons Co., [10 Cir.], 62 F.(2d) 544, 548, and cases there cited; Pendleton v. Russell, 144 U.S. 640, 12 S.Ct. 743, 36 L.Ed. 574; Chase Nat. Bank v. City of Norwalk, Ohio [291 U.S. 431], 54 S.Ct. 475, 78 L.Ed. [894]."

Under the facts before us, not only the bondholders were not parties to the mandamus actions in the state courts, but the writs of mandamus were predicated upon a statute which impaired the obligations of contracts, thus violating the federal Constitution.

As stated in 16 C.J.S., Constitutional Law, § 101, p. 289: "An unconstitutional legislative enactment legally binds no one, and need not be complied with. No rights are conferred, no protection is afforded, and no duties can be imposed, by such a statute."

In the case of Louisiana v. Pilsbury, 105 U.S. 278, 302, 26 L.Ed. 1090, the rule was announced as follows: "Legislation of a State thus impairing the obligation of contracts made under its authority is null and void, and the courts in enforcing the contracts will pursue the same course and apply the same remedies as though such invalid legislation had never existed." See Broughton v. Pensacola, 93 U.S. 266, 23 L.Ed. 896; Nelson v. St. Martin's Parish (State of Louisiana v. Police Jury of Parish of St. Martin), 111 U.S. 716, 4 S.Ct. 648, 28 L.Ed. 574; Mobile v. Watson, 116 U.S. 289, 6 S.Ct. 398, 29 L.Ed. 620; Huntington v. Worthen (Little Rock & Ft. S. R. Co. v. Worthen), 120 U.S. 97, 7 S.Ct. 469, 30 L.Ed. 588.

It therefore follows that the peremptory writs of mandamus in the state courts, compelling city clerks to accept bonds in payment of the street improvement assessments, do not constitute a defense of res judicata as against the relators in the suits here under consideration.

The case of City of Clinton ex rel. Daly v. Butts et al., Number 258 Civil, requires special consideration. Therein, the defendant L. M. Clayton, and those holding under him, have pleaded not only the peremptory writ of mandamus, as above considered, but also have pleaded a decree quieting title against all bondholders upon his cross petition in a state court street improvement lien foreclosure case involving the same district as here involved.

From the stipulation and agreed statement of facts filed by the parties, it appears that the defendant L. M. Clayton surrendered bonds under the provisions of Chapter 58, S.L.1933, 62 Okl.St.Ann. §§ 341–346, after the city clerk had been compelled by peremptory writ of mandamus to accept same in payment of the street improvement assessments. Most of these bond surrenders were made on January 17, 1938, just the day before the Oklahoma Supreme Court handed down its decision in Davis v. McCasland, supra, which held said 1933 Act unconstitutional.

Later, W. E. Harber, as relator, filed suit in state court to foreclose the street improvement lien upon all properties where the assessments remained unpaid. Numerous other property owners, who are defendants in the case at bar, had surren-

920

dered bonds in payment of their assessments under the 1933 Act, but L. M. Clayton was the only one of these who was made a defendant in the state court. He filed an answer and cross petition alleging payment of assessments by surrender of bonds, and prayed the court to quiet his title against all bondholders. An agreed judgment to such effect was taken in the state court foreclosure, with the acquiescence of the relator. The defendants now plead res judicata, as no appeal was taken from such agreed judgment.

To answer such plea, everything hereinabove said with reference to the peremptory writs of mandamus, applies to this situation, and the cases cited as authority equally apply. The relator in this court was not a party to the state court action and is not bound nor divested of his rights by such judgment. Also, the judgment contravenes the contract clause of the Constitution of the United States, and therefore will not be upheld by this court.

■ The defendants strenuously contend that the relator, W. E. Harber, as representative of all bondholders, subjected all bondholders to the jurisdiction of the state trial court so that its judgment is binding upon them. The judgment in favor of the defendant Clayton was rendered upon his cross petition. If he were suing the relator Harber as representative of the class, he should have complied with the provisions of the statutes in class actions.

The rule in this regard is stated in Pomeroy's Code Remedies, 4th Ed., sec. 287, as follows: "Whenever these provisions are invoked, in order that a plaintiff may be entitled to sue or a defendant to be sued in the representative character described, the facts showing that the requirements of either case have been complied with must not only exist, but must be alleged by the plaintiff as the very ground and reason for adopting the peculiar form of action permitted by the statute."

The relator herein cannot be bound by such state court judgment unless he was a party thereto or accepted the benefits of the judgment. It is quite apparent that the relator in the state court was not acting for the benefit of the bondholders but in prejudice of their interests.

Much of what was said by the Circuit Court of Appeals in Fetzer v. Johnson, supra, is applicable here. The holding of the same court in Boynton et al. v. Moffat Tunnel Improvement Dist. et al., 10 Cir., 57 F.2d 772, 781, also is applicable. The matter is summarized therein as follows: "There remains but to apply the rule. The plaintiffs herein are not parties to the state court suit, and that court cannot grant them the relief to which they are entitled. It is no answer to suggest that they might intervene in the state court; they have not, and are not required to. Our court, as apparently has the Colorado Supreme Court, has squarely held that the right to proceeds of taxes levied to pay bonds cannot be determined in the absence of the bondholders. St. Louis, etc., Ry. Co. v. Blake [8 Cir.], 36 F.(2d) 652; Denver Land Co. v. Moffat Tunnel Imp. District, 87 Colo. 1, 284 P. 339. No attempt had been made, when this action was brought, to bring the plaintiffs into the state court suit, if that could have been done. Even if they could be bound by class representation, which we do not intimate, we have no hesitancy in holding that these nonresident plaintiffs, owning $4,855,000 of these bonds, are not fairly represented by two trustees, without beneficial interest, who owned no bonds even as trustee when this suit was brought, and by one holding a single bond for collection under suspicious circumstances. Smith v. Swormstedt, 16 How. 288, 302, 14 L.Ed. 942."

■ This court holds, under the above rules, that the judgment of the state trial court does not constitute a defense of res judicata to the complaint of the relator.

■ In a number of the cases here under consideration, certain of the defendants are boards of education, towns and cities, in their corporate capacity, and boards of county commissioners of respective counties, in their capacities as municipal corporations. They were made defendants because they owned land, used respectively for school houses, city halls, fire stations, city parks, and county courthouses, against which street improvement assessments have been made in the districts here involved, whereon the assessments, or certain installments thereof, have not been paid. They all contend that the complainants are barred by laches from maintaining this action against them and rely upon the case of Board of Education of City of Duncan v. Johnston, supra, as sustaining their position.

As previously stated in this opinion, on the question of limitations, it is apparent

that the Oklahoma Supreme Court intended to limit such decision to apply only to the rights of municipal corporations. Such case will now be considered only from that standpoint. The Supreme Court was appalled by the fact that, as stated therein [115 P.2d 133]: "* * * all real property taxpayers of the school district, by the judgment rendered, are compelled to pay thrice the amount of the original cost had it been assessed in due course of law; * * *." Here it has gone astray of the facts. The property of the school district (Board of Education) was assessed "in due course of law" with all of the other properties. The Board of Education knew the amount that would be required to pay each annual installment the same as all other property owners. Section 20 of the street improvement act of 1923, 11 Okl.St. Ann. § 100, provides as follows: "Any property which shall be owned by the city, town or county or any board of education or school district, shall be treated and considered the same as the property of other owners, and such city, town, county, school board or Board of Education within such district to be assessed, shall annually provide by the levy of taxes in a sufficient sum to pay the maturing assessments and interest thereon."

The only reason the taxpayers of the school district were sued for "thrice the amount of the original cost" was because of the gross dereliction of duty of their own servants in not having provided annually by the levy of taxes to pay the annual installments of the street improvement assessments which these taxpayers had themselves incurred. They had received the benefits of these street improvements, and had permitted the issue of bonds to pay for same.

The bonds in most of these paving districts were ultimately purchased, for the most part, by individuals living at various points throughout this nation. They made their investments in the good faith that all public officials, charged with the duties of collecting the assessments in order to retire the bonds, would perform their full duties. They had no way of knowing or suspecting that the municipal corporations who owned property in the improvement district were not fulfilling their obligations and performing their statutory duties. Payments from individually owned properties were in almost every instance sufficient to keep the semiannual interest cou-

pons paid when due, and these investors had no cause to think that the bonds would not be paid when due. Even after maturity when these individual bondholders learned of the defalcations of these school districts and other municipal corporations, they were for the most part helpless to do anything to remedy the situation, as they did not own sufficient bonds in any one district to justify financing the necessary litigation to enforce the collection of the unpaid assessments of the district, for the benefit of all other bondholders as well as themselves.

Where these school boards, or other branches of the sovereignty, have omitted or refused to make the annual levies in their budgets to pay for the street improvements which they obtained, it is inconsistent for them to plead that the bondholders are estopped by laches from collecting the assessments at this time. They will not be permitted to take advantage of the bad situation they alone created. Such pleas are denied.

The question next arises, what kind of judgments shall be awarded in favor of the bondholders and against such municipal corporations?

█ No personal judgment in such cases can be rendered against a municipal corporation. See, First National Bank in Wichita et al. v. Board of Education of City of Enid et al., 174 Okl. 164, 49 P.2d 1077; Independent School District No. 39, Creek County et al. v. Exchange National Co., 164 Okl. 176, 23 P.2d 210, 95 A.L.R. 685.

█ Publicly owned property used for public purposes cannot be sold to satisfy such special assessment lien, as announced by the Oklahoma Supreme Court in Blythe v. City of Tulsa et al., 172 Okl. 586, 46 P. 2d 310.

It is noted here that the complainants in these cases concede these principles, and have not asked for personal judgments nor for the sale of municipally owned properties.

█ The remedy of the complainants, as announced by the Tenth Circuit Court of Appeals in Dwyer et al. v. LeFlore County, Okl., et al., 97 F.2d 823, 826, is that said complainants are entitled to have their rights adjudicated, that is, they are entitled to decrees determining the amounts of the liabilities of the respective defendants on account of the assessment of bene-

fits against their properties in the improvement districts involved. As stated in said case: "After the amount of liability had been fixed by decree or judgment, if the requisite levies are not made, then the court may entertain the question of ancillary mandamus in aid of its existing jurisdiction. Gray et al. v. City of Santa Fe, N. M., 10 Cir., 89 F.2d 406." See, also, Hovenden v. City of Bristow, Okl., D.C., 34 F.Supp. 674.

■ In certain cases from the City of Hollis, Oklahoma, the defendant board of education contends that an appeal is being prosecuted by it to the Supreme Court of Oklahoma, affecting the same subject matter as the cases here involved, and that, therefore, this court has no jurisdiction to pass on such questions, citing as authority the case of Hutchins v. Pacific Mutual Life Ins. Co. of California et al., 9 Cir., 97 F.2d 58. However, it appears that the only question before the State Supreme Court is whether the state trial court erred in granting the plaintiff therein a peremptory writ of mandamus compelling the defendant board of education to include in its budget for the fiscal year 1940-1941 an estimate and levy for the amount of the 1929 installment of the street improvement assessment, with interest and penalty.

The actions pending before this court are not mandamus actions but are foreclosure actions for all delinquent installments, under the provisions of the 1923 street improvement act.

As seen above, the question presented to the State Supreme Court is now moot, because it is too late to include any levies in the board of education's budget for the fiscal year 1940-1941 which has expired.

In view of the rulings hereinabove made on the question of laches and limitations, a violation of the federal Constitution being involved in these cases, this court is not bound by the decision of the State Supreme Court.

In some of the cases here involved, the defendants have interposed the defense that the complaints should be dismissed because the complainants have not alleged and proved the rendition for, and payment of, the intangible personal property tax as required by Article 4, Chapter 66, S.L. 1939, 68 Okl.St.Ann. § 1501 et seq. The relators have alleged diversity of citizenship, which the defendants have not attempted to refute. In some of these cases there are stipulations wherein the defendants agree as to the citizenship of the relators and agree that the bonds sued upon came into Oklahoma shortly before the suits were filed and for the purpose of bringing these suits.

■ It is apparent that the bonds belonging to out-of-state investors, sent into this state for the purpose of collection through legal action as herein, have not acquired a taxable situs in Oklahoma. This position is supported by a recent decision of the Oklahoma Supreme Court in Shidler v. Ross et al., 113 P.2d 603, 604, wherein the court said: "The note in question never acquired a taxable situs, in this state, under said act. The uncontradicted evidence is that the note was executed in Oklahoma and mailed to one of the plaintiffs who lived in Kansas; that all four of the payees lived in Kansas and that the note was kept in Kansas at all times until it was sent to the attorney for plaintiff for this action."

■ It is not within the province of state legislatures to restrict the procedure of federal courts and, therefore, this court's jurisdiction could not be limited by the provisions of the Oklahoma intangible tax law.

■ In some of the cases the defendants contend that the city or town appearing as plaintiff being an Oklahoma municipal corporation, and the defendants being citizens of Oklahoma, diversity of citizenship does not exist.

The action is not brought by the city or town and it is not the moving party in the litigation. The city is a mere nominal party plaintiff, whose citizenship is not considered in testing the diversity of citizenship. The relator is the party authorized by statute to conduct the litigation and it is his citizenship only that is to be tested.

The court holds that there is complete diversity of citizenship, and the relators are entitled to maintain these actions in this court. See, State of Oklahoma v. Oklahoma Natural Gas Corp., 10 Cir., 83 F.2d 986; Omaha Hotel Company v. Wade, 97 U.S. 13, 24 L.Ed. 917; Oklahoma City v. Vahlberg, supra.

■ A number of defendants plead an arbitrary subdivision of the assessments made by city officials subsequent to the

time the improvement benefits were assessed and levied against the lots. It appears that ordinarily these defendants purchased only portions of the lots, after the assessments had been levied against the entire lot or lots. Said defendants have paid only that part of the assessment which the portion of the lot or lots purchased by them bore to the entire lot or lots, and pray that their portions of the lot or lots should be relieved of the unpaid balance of the assessment. The complainants have sued for the unpaid balance of the entire assessment against the entire lot or lots, after having given credit for the partial payments made. Such arbitrary subdivisions of the assessments were attempts to alter the contract without consent of the bondholders and cannot be upheld. The assessments must remain against the lots as originally assessed, with credits allowed for partial payments made. See, Jones v. City of Dothan, 230 Ala. 103, 159 So. 689, and Williams et al. v. Bergin, 127 Cal. 578, 60 P. 164. The Oklahoma Supreme Court apparently has not passed upon this question but the Attorney General of Oklahoma has held to the same effect in an opinion of March 2, 1933.

■ This court has previously held, in accordance with the state court's ruling in Davis v. McCasland, supra, that street improvement assessments, or installments thereof, could not be paid by surrender of bonds. If, in any of these cases, judgment has not been rendered upon the prayer of the complainant to set aside and cancel all such bond surrender transactions, it is now adjudged that the respective city or town clerks shall cancel all receipts for street improvement assessments where bonds were surrendered in payment thereof, reinstate the assessments or installments upon his street improvement assessment rolls, reinstate the bonds so surrendered, and issue good and proper participation certificates to stand in lieu of every endorsement of credit upon all such surrendered bonds, issuing separate certificates to represent interest coupons surrendered or attached to the bonds at the time of surrender, and separate certificates to represent portions of the principal of said bonds as used and surrendered. Such procedure recently has been upheld by the Circuit Court of Appeals, Tenth Circuit, in City of Wewoka, Okl. et al. v. Banker et al., 117 F.2d 839, wherein the fourth headnote reads: "A holder of municipal improvement district bonds was authorized to maintain in behalf of those similarly situated suit to foreclose delinquent paving assessment liens and to have restored assessments, penalties and interest which had been paid by surrender of bonds pursuant to an unconstitutional Oklahoma statute. 11 Okl.St.Ann. § 107; 62 Okl. St.Ann. §§ 341–346."

By reason of the importance of these cases and the great number of parties awaiting the outcome, the court has considered them as a group and has attempted to decide all common questions at one time. It may be that in certain of the cases here involved, some of the issues have not been determined by this opinion, or, from the state of the pleadings, the rulings herein are premature. If any such there be, the court's attention should be called to them specifically. As to all cases applicable, separate forms of judgment should be submitted, consistent with the rulings herein made.