### LEDEGAR v. BOCKOVEN, Co. Treas.

No. 11047—Opinion Filed Dec. 2, 1919.

Rehearing Denied Dec. 23, 1919.

(Syllabus by the Court.)

**1. Statutes—Construction—Validity.**

In construing a statute to ascertain if the same be in violation of the Constitution, if the proper construction is doubtful, this doubt must be resolved in favor of the law, though such construction may not be the more natural interpretation of the language used.

**2. Same—Punctuation.**

A court will disregard punctuation of a statute or repunctuate it, if need be, to give effect to what otherwise appears to be its purpose and true meaning.

**3. Same—Validity of Statute.**

Where an act is susceptible of two constructions one of which will uphold the constitutionality of the act, a court must adopt that construction which will uphold the law, and this the court must do if it be in doubt as to which construction to follow.

**4. Same—Reasonable and Just Interpretation.**

If there is a doubt or ambiguity in a statute, it is the duty of a court in interpreting the same to give to it the most reasonable and just interpretation as the legislative intent, rather than an interpretation unreasonable, unjust, or one that will lead to an absurdity.

**5. Taxation—Private Sale—Public Sale.**

Section 5 of chapter 130 of the Session Laws of 1919 construed, and held that the proviso therein "that in no event shall the county be liable to the state or any taxing district thereof or to any special assessment lienholder for any part of the amount for which any such property may be sold" refers to the private sale to be made by the county treasurer to be approved by the board of county commissioners as provided in said section, and not to the sale at public auction to the highest bidder provided therein.

**6. Taxation—Power of State to Cancel Tax.**

It is within the sovereign power of a state to subject all the property situated therein and not otherwise exempt to taxation. The state is obligated to exercise the utmost good faith to collect the taxes on property necessary to liquidate the securities of its municipalities. When, however, the tax charge against property is in excess of its value, a state may, within the exercise of its sovereign power, after the exercise of good faith to collect the delinquent taxes due thereon, cancel or set aside such delinquent taxes or any portion of same and place the property upon the tax rolls and thus make it help bear the burdens of government.

**7. Taxation—Time of Sale.**

Section 5 construed, and held that the county treasurer must commence the sale between the hours mentioned therein, but the sale may be continued from day to day between the same hours until the sale is completed.

**8. Same—Tax Deed—Effect to Cancel Taxes.**

Section 6 construed, and held that a tax deed issued as provided therein cancels and sets aside all taxes, which includes ad valorem and paving taxes delinquent at the time the sale was made at which the property was bid off by the county treasurer in the name of the county, and referred to in the first part of article 3, chap. 130, supra, amending section 7409 of the Revised Laws of 1910.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by H. J. Lenegar against A. E. Bockoven, county treasurer of Oklahoma county. Judgment for defendant, and plaintiff brings error. Affirmed.

D. M. Tibbetts and Fred W. Green, for plaintiff in error.

S. P. Freeling, Atty. Gen., E. L. Fulton, Asst. Atty. Gen., and Robert Burns, Co. Atty. of Oklahoma County, for defendant in error.

HIGGINS, J. The parties to this suit hold the same relative position in this court as in the lower court and will be referred to in this opinion as plaintiff and defendant.

The plaintiff, the owner of certain paving bonds, instituted this suit to restrain the defendant, the county treasurer of Oklahoma county, from selling certain property covered by his bonds at a tax sale. The lower court

refused the injunction and the plaintiff appeals to this court.

The plaintiff contends that the law under which the defendant is seeking to sell the property covered by his paving bonds is unconstitutional for the reason that it seeks to impair the obligation of a contract in violation of section 10 of article 1 of the federal Constitution, and that the time fixed for the sale is so short a period of time that a sale of the property advertised within such a time would be practically a confiscation of the lien reserved to plaintiff's paving bonds.

The particular statutes under which this sale is advertised to be made by the county treasurer are sections 4 and 5 of chapter 130 of the Session Laws of 1919, and are as follows:

"Section 4. That section 7410 of chapter 72 of article 9, of the Revised Laws of the State of Oklahoma, 1910, be and the same is hereby amended to read as follows:

"Section 7410. The treasurer shall give notice of the sale of such real estate by the publication thereof once each week for four consecutive weeks preceding the sale, in some newspaper in the county, and if there be no paper published in the county, he shall give notice by written or printed notice posted on the door of the court house or building in which courts are commonly held, or at the usual place of meeting of the county commissioners. Such notice shall contain a description of the real estate to be sold, the name of the last record owner of said real estate as shown by the records in the office of county clerk, the time and place of sale, and a statement of the date on which said real estate was sold to the county for delinquent taxes, or the year or years for which taxes have been assessed and said lands have not been advertised or sold and that the same has not been redeemed for the period of two (2) years from the date of such sale, and the amount of taxes, costs, penalties and interest accrued on the same and that such real estate will be sold to the highest bidder for cash; provided, that sales provided for in this act shall be held on the fourth Monday of November of each year in each county."

"Section 5. That section 7411, of chapter 72, of article 9, of the Revised Laws of the State of Oklahoma, 1910, be and the same is hereby amended to read as follows:

"Section 7411. On the day said real estate is advertised for re-sale the county treasurer shall, between the hours of one o'clock and four o'clock p. m. at his office, where, by law, the taxes are made payable, sell at public auction to the highest bidder for cash each tract or lot of land so advertised, and then in case there be no other bidder for any real estate so offered for sale, the county treasurer shall bid off the same in the name of the county for the amount of taxes, penalty and costs due thereon and shall issue deed therefor in the name of the chairman of the board of county commissioners and his successors in office for the use and benefit of the county, and thereafter said property shall be exempt from assessment for ad valorem taxes so long as title is held for the county; provided that in no event shall the county be liable to the state or any taxing district thereof or to any special assessment lien holder for any part of the amount for which any such property may be sold. Any property acquired by the county under the provisions of this section may be sold by the treasurer at such price as may after notice by publication be approved by the board of county commissioners. Said notice of publication shall be given by the treasurer in the official county paper and shall embrace a description of the property, the price and to whom proposed to be sold, and stating that he will on a given date to be stated in the notice apply to the board of county commissioners for its approval of said sale and for an order directing that deed for said property be executed by the chairman of said board. The proceeds of sale of any property acquired by the county under the provisions hereof shall accrue to the common school fund of the county."

The history of the paving bonds owned by plaintiff is as follows: In July, 1909, the city of Oklahoma City adopted an ordinance creating "Improvement District No. 73", and under this ordinance the streets of that district were paved and bonds in the sum of $75,260.80 were issued in payment thereof. The law in force at the time this ordinance was adopted defining the rights of the holders of these bonds is set forth in section 634 of the Revised Laws of 1910 and is as follows:

"634. Assessments a lien. Such special assessments and each installment thereof and interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the date of the ordinance levying the same, co-equal with the lien of other taxes, and prior and superior to all other liens against such lots or tracts; and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty."

Default was made in payment of the taxes by the owners of certain lots in this improvement district upon which a lien exists to pay the paving bonds in question. These lots have heretofore been sold at a tax sale as provided by sections 7397, 7398 and 7399, supra, and in default of bidders the county bid the same in as provided by section 7406, supra. The county held the property for two years, during which time the owner failed to

redeem the same as provided in section 7407, supra, and no one offered to purchase the interest of the county as provided in section 7408, supra. The county now proceeds to sell these lots again at public auction as provided in sections 4 and 5, chapter 130, supra.

The plaintiff contends that the provision of section 5, supra, wherein the county is not liable to him under his bonds for the amount bid at such tax sale for the lots covered by his bonds refers to the sale therein at public auction and not to the private sale by the county treasurer referred to later in the same section and therefore destroys the equality of his lien with the lien of other taxes as provided in section 634, supra, and is therefore for that reason in violation of section 10, chapter 1 of the Federal Constitution which prohibits a state from passing a law impairing the obligation of a contract.

The law in force at the time of the passage of the ordinance creating the paving district, to wit, section 634, supra, entered into and became a part of the contract of the bonds.

The question for interpretation before this court is whether or not the proviso of section 5, supra, which sets forth "that in no event shall the county be liable to the state or to any tax district thereof or to any special lien holder for any part of the amount for which any such property may be sold" refers to the first sale provided therein which must be at public auction or to the second sale in the latter part of the section which is a private sale by the county treasurer upon the approval of the board of county commissioners.

In interpreting a statute to ascertain if the same be in violation of the federal or state Constitution, the following law is laid down by the authorities as a guide:

"If the proper construction of a statute is doubtful, the doubt must be resolved in favor of the law, even though the construction upholding the law may not be the more natural interpretation of the language used." 25 R. C. L. 1002.

"It seems to be well settled that punctuation is a fallible standard of the meaning of a statute, and the last resort as an aid in its interpretation, though it may be resorted to as such aid when the meaning of the statute is doubtful. In the interpretation of statutes the true meaning of the lawmaker must be ascertained from the whole purview, and when that is manifest from a judicial inspection the court will not permit punctuation to control, but will disregard the punctuation of a statute or repunctuate, if need be, to give effect to what otherwise appears to be its purpose and true meaning." 25 R. C. L. 966.

"Where an act is fairly susceptible of two constructions, one of which will uphold the validity of the act while the other will render it unconstitutional, the one which will sustain the constitutionality of the law must be adopted." 25 R. C. L. 1001.

If there be any doubt or ambiguity in a statute, a court should give it that interpretation which is the most reasonable and just as the legislative intent rather than an interpretation which is unreasonable and unjust, or would lead to an absurdity. See sections 255, 256, 257, and 258, in R. C. L., vol. 25, supra.

Adopting the foregoing authorities as a guide, let us now ascertain the legislative intent in providing that the county shall not be liable to any special lien holder for the amount for which any such property may be sold. Does it mean the proceeds of the first or second sale authorized in said section 5? If we take the literal language and the punctuation alone as a guide, the conclusion may be reached that the first sale is meant. If a literal construction or punctuation renders an act unconstitutional, then neither should be adopted as a guide if the act is capable of any other interpretation which will uphold its constitutionality. If the intent of the legislature can be ascertained from the act, then the court has authority to repunctuate the text so as to uphold the legislative intent.

In section 5, supra, following the provision that a deed shall be issued to the chairman of the board of county commissioners, it is further provided what thereafter shall be done, that the property shall be exempt from ad valorem taxes, that the county shall not be liable, and then it is provided for the private sale by the county treasurer. We believe and so find that it was the legislative intent that the word "thereafter" used in said text was intended to go with and did go with the proviso that the county should not be liable for the proceeds of the sale of the lots at the private sale by the county treasurer which was to be approved by the board of county commissioners did not refer to the first sale authorized by said section. If the county were permitted to retain the proceeds of the first sale, then the law would be unreasonable, unjust and a destruction of the equality of liens as provided by section 634, supra. Therefore we find that the proceeds of the first sale as provided in section 5, supra, should be by the county treasurer disbursed as required of him in the disbursement of the proceeds of the sale provided in sections 7397, 7398 and 7399, supra, and if there be a deficiency, then after a deduction of the cost of sale, the remainder should be proportioned among the municipalities and parties entitled to the same in

proportion to their assessment for which the levy was made.

It is within the powers of a sovereign state to subject all the property situated therein, and not otherwise exempt, to taxation and make it bear its burdens of government. It is also within the power of a sovereign state, when property becomes so burdened with taxes that the tax charge is in excess of the value of the property, to release the property from such burden or any portion of the same, and thus make the property revenue bearing again both for the state and for any one having a special lien thereon for the payment of paving taxes. The state must, however, exercise all reasonable methods to secure a payment of the taxes due. In the instant case this property had once been offered at public sale and in default of a bidder was bid in by the county, then two years intervened during which time the owner failed to redeem the same and no one sought to purchase the county's interest. The county now offers the property at public auction to the highest bidder and is not permitted to bid in the same if a bid in any sum whatever is offered. The intent of the law in permitting the county to purchase the property in default of bidders is to again place the property on the tax rolls and make it revenue bearing to all parties interested in the taxes to be charged against the same. It is a matter of common knowledge that in outlying portions of some of the towns and cities of the state that streets have been paved, that other improvements did not keep apace with the street improvements and as a result the tax charged against the land is in excess of its value, and that for the past several years taxes have not been paid thereon.

To remedy this evil was the reason for the passage of chapter 130, supra. It is to the interest of the paving bond holder as well as to the state to have this property again revenue bearing, for by so doing he may be paid in part at least the amount called for in his bond. We find that if at this second sale at public auction to the highest bidder there be no one willing to bid any sum for the property in question that the state then has exercised every reasonable method to secure the taxes due the bond holder and may within its sovereign power as a state take the property in its own name and for its own use, cancel off the taxes delinquent at the time the sale as provided by sections 7397, 7398 and 7399 was made and place the property again on the tax rolls free of such delinquent tax. To require a state in such a case to enter the competitive field and bid or pay some sum in order to subject the property within the state to taxation would be belittling state sovereignty. The private sale by the treasurer to be approved by the board of county commissioners is not claimed by the parties to this suit to be a violation of the federal constitution. We see nothing invalid in the county acquiring title in this manner but be that as it may, if it should be the law that the lien for the payment of the paving bonds go into the proceeds derived from this sale, then so good and wholesome a law as this should not fail for that reason. The plaintiff has his remedy by mandamus on the county treasurer.

It is contended by the plaintiff that the issuance of a tax deed as provided in section 6 of chapter 130, supra, cancels and sets aside all future installments due upon the paving bonds for the reason that the assessment for the pavement was made on the adoption of the ordinance creating the improvement district. We do not believe that section 6 should be so interpreted. The county treasurer must wait two years after the first sale as provided in sections 7397, 7398 and 7399, Revised Laws 1910, before offering the property again for sale. If a deed cancels all taxes assessed prior to its date, then the taxes for the year 1919 would be cancelled off without an opportunity to pay the same. We believe the better interpretation and from a consideration of the full text find that it was the intent of the legislature that the tax deed provided for in section 6, supra, cancels off and sets aside all taxes which would include ad valorem and paving taxes delinquent at the time the sale was made at which the property was bid off by the county treasurer in the name of the county and referred to in first part of section 3, of chapter 130, supra, amending section 7409 of the Revised Laws of 1910.

Again it is urged by the plaintiff that if the sale must take place between the hours of one and four o'clock, and the treasurer has no discretion to adjourn the sale from day to day, this will be a practical confiscation of the lien reserved for the payment of the paving bonds for the reason that in the instant case the advertisement covers some 70 pages of a newspaper and it is a physical impossibility to offer the property for sale during these hours.

As to the power of the one having the authority to sell property for the payment of delinquent taxes, in Wells v. Austin, 59 Vt. 157, it is stated:

"The collector adjourned his sale from

time to time. The day fixed for the sale was February 25, 1841, and on that day the Pike lot was sold. If a subsequent adjournment was made it would not affect the validity of this sale. But it did not affect any sales. The collector is bound to conduct the sale for the best interests of all concerned. If he deemed it necessary to adjourn, he had the right to do so. No presumption is to be made against him so doing."

We therefore hold that it is the duty of the county treasurer to commence the sale at the time required by law, but he may adjourn the sale from day to day between the same hours until the sale is completed.

We therefore find that with a proper interpretation of chapter 130, supra, that the state has kept full faith with the holders of the securities of its municipalities. And that in the instant case every act contemplated to be done thereunder is as much to the interest of those holding the paving bonds as to the state. We do not find that any obligation entering into the contract of the bonds has been impaired or that said chapter 130 is in any way in conflict with section 10, article 1, of the federal Constitution.

Judgment affirmed.

All the Justices concur.