## STATE ex rel. GULAGER v. MOORE.

No. 11118—Opinion Filed April 20, 1920.

(Syllabus by the Court.)

**Taxation—Tax Sale of Land—Resale—Effect to Cancel Taxes.**

Certain lots in the city of Muskogee were assessed for ad valorem taxes in the year 1913. The taxes becoming delinquent, at the regular sale of property for delinquent taxes, on the 10th day of November, 1915, the lots were offered for sale. For want of bidders the same were bought by the county treasurer for the county for the amount of the taxes, penalties, and costs due thereon. Thereafter, on the 29th day of November, 1919, the lots were resold for taxes, penalties, and costs for the years 1913 to 1918, inclusive. Held, that it was the duty of the county treasurer, within ten (10) days after such resale, to execute, acknowledge, and deliver to the purchaser, or his assigns, a deed conveying the lots thus resold, which deed should expressly cancel and set aside all ad valorem taxes, penalties, interests, and costs previously assessed or existing against said lots.

Error from District Court, Muskogee County; Benj. B. Wheeler, Judge.

Mandamus by the State, on the relation of W. M. Gulager, against Cecil Moore, county treasurer of Muskogee county, to execute tax deed. Judgment for respondent, and relator brings error. Reversed and remanded.

Gibson & Hull, for plaintiff in error.

W. W. Cotton, Co. Atty., R. E. Jackson, Asst. Co. Atty., and W. C. Hall, Asst. Atty. Gen., for defendant in error.

PITCHFORD, J. This is an action for a mandamus against the county treasurer of Muskogee county. Taxes for the year 1913 were assessed and levied against the two lots involved; the same became delinquent. At the regular tax sale of property for delinquent taxes held in Muskogee county on November 10, 1915, the lots were offered for sale and were bought by the county treasurer for the county, for the amount of the taxes, penalties, and costs due thereon. Thereafter, in the years 1914, 1915, 1916, 1917,

and 1918, the lots were duly assessed for taxes, and certified to the county treasurer and entered by him upon the tax books of the county, and in each of said years the taxes became delinquent and not paid. The county treasurer made out a certificate of purchase to the county, and, each year thereafter, as the taxes became delinquent, endorsed the amount thereof upon the certificate of purchase, but did not offer the property· for sale for taxes for such subsequent years.

Thereafter, no person having offered to purchase the certificates of purchase, on the 29th day of November, 1919, the lots were resold as required by law. The total amount of taxes, penalties, interests, and costs due upon the lots for the years 1913 to 1918, inclusive, at the time of the resale, amounted to $36.96 and $33.60, respectively. The relator, Gulager, was the highest bidder 'at the sale, having bid the sum of $41 for the first lot and $2.75 for the second, and they were sold to him therefor. He demanded that the·treasurer execute a deed to him, including an express provision cancelling and setting aside all ad valorem taxes, penalties, interests, and costs assessed for the years 1913 to 1918, inclusive, and that he make an entry upon the tax records in his custody and control, showing the cancellation of said delinquent taxes. The treasurer refused to execute such a deed, but offered to execute a deed containing a provision cancelling only such taxes, penalties, etc., as were assessed against the premises and existing at the time of the original sale, and offered to can= cel such taxes on the books of the county, leaving outstanding, as delinquent, taxes assessed for the years subsequent to 1913.

In the district court, the county treasurer appeared and filed a response to the petition which consisted of a general demurrer; this demurrer was sustained, to which the relator excepted and stood upon his petition for peremptory writ. Judgment was thereupon rendered for the defendant, from which the relator appeals.

The only question herein involved is whether or not section 6, ch. 130, Session Laws 1919, operates to vest the title in the purchaser free and clear of all delinquent ad valorem taxes at the time of the resale, or only of such taxes as were delinquent at the time of the original sale, at which time the county became the purchaser.

If such a resale vests title free of such delinquent taxes at the time of the resale, the writ of mandamus should have been granted. If it vests it free of only such taxes as were delinquent at the time of the original sale to the county, the judgment denying the writ should be affirmed.

Section 6, ch. 130, Session Laws 1919, amends section 7412, ch. 72, art. 9, Rev. Laws 1910, to read as follows:

"Section 7412. Within ten (10) days after such resale the county treasurer shall file in the office of the county clerk a return of his resale of such real estate, and retain a copy thereof in his office, which return must show the real estate so sold, the name of the purchaser and the price paid by him therefor, also a copy of the notice of such resale with an affidavit of its publication or posting, and such notice and return shall be presumptive evidence of the regularity, legality and validity of all the official acts leading up to such resale. And within said ten (10) days the county treasurer shall execute, acknowledge and deliver to the purchaser, or his assigns, a deed conveying the real estate thus resold, which deed shall expressly cancel and set aside all taxes, penalties and interest and costs previously assessed or existing against said real estate, including paving taxes and outstanding tax certificates, and such deed shall vest in the purchaser and grantee of said real estate an absolute and perfect title in fee simple to said land, and that where there are both ad valorem and special taxes due, the county treasurer must advertise and sell for all taxes in the same sale, and such deed shall contain a summary statement of the matters and proceedings of such resale, and six (6) months after said deed shall have been filed for record in the county clerk's office, no action shall be commenced to avoid or set said deeds aside.

"Any number of lots or tracts of land may be included in one deed for which deed the treasurer shall collect from the purchaser one dollar ($1) for the first tract and ten (10) cents for each additional tract included therein. The treasurer shall also charge and collect from the purchaser at such sale the sum of twenty-five (25) cents on each tract of real property and fifteen (15) cents on each town lot so advertised and sold for the cost of publishing said notice of sale, which sum shall be paid into the county treasury and the county shall pay the cost of publishing such notice of resale.

"And any tract or lot of land sells for· more than the taxes, penalties, interest, and costs due thereon, the excess shall be turned into the county treasury and there be held for the prior owner of such land to be withdrawn at any time wthin two (2) years, and at the end of two (2) years, if the same is not withdrawn or collected from the county treasurer the same shall be turned into the county sinking fund."

There can be no doubt that one of the purposes of this act was to cancel all ad valorem taxes, together with the accruing penalties against property offered at sale for

delinquent taxes and bought in for the county by the county treasurer. While the act also provides that all paving taxes shall be canceled, this last question is not involved in this action. The portion of the act herein involved has to do only with ad valorem taxes; therefore, it is not necessary to construe that part of the act referring to special or paving taxes, and nothing herein decided is intended to overrule any part of the opinion in the case of Ledegar v. Bockoven, 77 Okla. 58, 185 Pac. 1097, further than to say that the question of ad valorem taxes was not directly involved in that action. There, certain bondholders sought to restrain the county treasurer from proceeding with a resale of certain lots in Oklahoma City, contending that the law under which the treasurer was seeking to sell the property covered by paving bonds was unconstitutional, for the reason that it impaired the obligation of the contract evidenced by the bonds, and that the time fixed for the sale was so short a period of time that the sale of the property advertised within such a time would be practically a confiscation of the lien reserved to plaintiff's paving bond. We are of the opinion that paragraph 6 of the syllabus in that case should be modified by eliminating any and all references to ad valorem taxes.

In a resale for delinquent ad valorem taxes, we are unable to see wherein the Legislature irtended there should be any distinction between the right of the county in taking the property where there are no bids and the right accruing to an individual who should bid at the resale. If the county, because there are no bids, may take the property and cancel off all ad valorem taxes delinquent at the time of the sale, why should not the purchaser at that sale be entitled to the same right? Nothing in the act militates against this view. Besides, the same condition would again obtain were there no bidders at the resale. The county would again have the property on hand, and the treasurer would be looking around for private bidders, as provided for under section 5 of chapter 130, supra. Section 6, supra, is not ambiguous. It specifically states what the county treasurer shall do as to the execution of the deed to the purchaser.

When the county bid in these two lots for taxes at the tax sale of 1915, it held the same until 1919, failing to comply with the statute in offering the same for sale two years thereafter, and when the property was sold in 1919 for taxes, penalties, etc., accruing from 1913 to 1918, inclusive, the taxes for each year were included in the advertisement of sale, and it stated that the total amount of such taxes, penalties, interest, and costs due for the years 1913 to 1919, at the time of said sale amounted, respectively, to $39.96 and $33.60. One lot sold for more, the other for less, than the total amount of all taxes, penalties, etc., delinquent at the date of sale. It is evident the Legislature intended there should be no distinction as to the right of a purchaser where a bid was equal to or greater than the amount of taxes and where the bid was for less, and we are to suppose that this was in the legislative mind at the time of the enactment of chapter 130, supra, as the act provides that any number of lots or tracts of land may be included in one deed. It is well known that in many places in the state town lots depreciated greatly in value. It was gravely doubted as to whether or not there would be bids sufficient to cover the amount due for taxes, if the resale was made, and we are to presume that for this reason these lots, among others, having been bought in by the treasurer for the county, in 1915, were not thereafter offered for sale until after the passage of the act of 1919, supra,

The very purpose of the act would be frustrated were we to give section 6 any other interpretation than that which the language clearly conveys. If, when the lots were sold, the purchaser had reason to apprehend that he was only getting the property with the taxes canceled delinquent at the time the same was purchased by the county, there would be less incentive to purchasers to bid, and therefore the county would take the property in its own name and for its own use and cancel off the taxes delinquent at the time of the sale.

While in some instances it might be that no one would bid for the property an amount sufficient to cover the taxes due, on the other hand, as was done in the instant case, there might be a bid for more than the total amount of taxes, penalties, interest, and costs on some of the lots, and the county, to that extent, would be benefited. In other words, if there are no bids, then the county gets no taxes, where as there is a hope at least that someone will bid when he knows he is to receive the property free of all delinquent ad valorem taxes up to the time of the sale.

When the treasurer bids in for the county, the county thereby acquires a lien for the amount of such taxes, the same as any individual purchaser would have acquired. But unlike the case in which there was an individual purchaser, the subsequent taxes accruing against the land and becoming delin-

quent cannot be collected by delinquent sales for such subsequent taxes, the county's right in such case being merely the indorsement of such subsequent taxes upon the tax sale certificate held by it. For had the county sold the taxes becoming delinquent for years subsequent to the year in which it purchased, its lien for the taxes for the year for which it purchased would thereby nave been destroyed.

In Emmons v. Bennett, 81 S. W. 22, the Supreme Court of North Dakota, in construing a statute similar in many respects to ours, held that the tax sale for taxes accruing in the years subsequent to those in which the land was bought in by the county cut off the county's lien, and the purchaser at such sale, upon procuring the title, took the deed free of such taxes. The court said:

"All of the proceedings relative to the taxes in question were governed by the Compiled Laws of the then territory. By section 1630, the county treasurer was authorized to bid off lands at tax sales in the name of the county in the absence of other bidders. Said section declares that the county acquires 'all the rights, both legal and equitable, that any other purchaser could acquire, by reason of said purchase.' Section 1632 authorized an assignment of the county's certificate to any person who would pay the taxes, penalty, interest, and costs of sale and transfer, and declares that such 'assignment and transfer shall convey unto said purchaser all rights of said county, both legal and equitable, in and to said real estate, as much so as if he had been the original purchaser at said tax sale. These provisions do not seem to leave room for doubt that it was the legislative purpose to create an authority in the county to become a purchaser on the same basis as an individual in the contingency of there being no private bids. * * * We accordingly have reached the conclusion that the interest acquired by the county by its purchase at the tax sale was effectually cut off by the sale and delivery of a tax deed to Bennett upon a subsequent tax, and, therefore, the county is not entitled to judgment."

In the case of Auditor General v. Clifford et al. (Mich.) 107 N. W. 287, the court said:

"The general rule is that a sale and a conveyance in due form for taxes extinguishes all prior liens, whether for taxes or otherwise. This rule is one of necessity growing out of the government for its revenue. Tax liens take priority in the reverse order of other liens."

In Anderson v. Rider, 64 Cal. 134, it is said:

"The title acquired under a tax sale for taxes of a subsequent year must prevail over a title founded on a sale for the taxes of a previous year."

Section 7412, supra, as amended by the Session Laws of 1915, ch. 47, p. 55, provided that the resale deed should vest in the purchaser a title free of all "delinquent taxes due" at the time of the resale, for it was by paying such "delinquent taxes due" that the record owner could redeem from the resale.

Evidently, by the act of 1919, it was not the purpose of the Legislature to give the purchaser a more restricted title than he secured under the act of 1915. By inserting a clause requiring an express provision in the deed canceling all taxes previously assessed or existing against the real estate, the Legislature intended that the deed, upon its face, would disclose the fact that all delinquent taxes, up to the time of the sale, had been canceled.

It is therefore ordered that the judgment of the district court of Muskogee county be reversed; the cause remanded, with directions to issue a peremptory writ of mandamus as prayed for against the defendant in error, requiring him to issue a deed as demanded by relator, canceling of record all delinquent ad valorem taxes appearing against said two lots in his office for the years 1913 to 1918, inclusive, together with all penalties, interest, and costs thereon.

OWEN, C. J., and HARRISON, JOHNSON, BAILEY, and HIGGINS, JJ., concur; RAINEY, V. C. J., disqualified; and KANE and McNEILL, JJ., not participating.