**TOWN OF MARSHALL ex rel. VERSLUIS
v. CAREY et al.**

No. 609–Civil.

District Court, W. D. Oklahoma.

Dec. 2, 1941.

Chal S. Wheeler and L. W. Randolph, both of Muskogee, Okl., for plaintiff.

Hugh J. Adams, Co. Atty., and Merle G. Smith, both of Guthrie, Okl., and Frank Houston and Mark B. Ingle, both of Oklahoma City, Okl., for defendants.

VAUGHT, District Judge.

This is an action by the owner of street improvement bonds to foreclose the lien of the paving assessments against lots in Street Improvement District Number 2 in the Town of Marshall, Oklahoma. The case has been submitted to the court upon agreed statements of fact and the parties have submitted briefs upon the questions of law involved.

It is not considered necessary here to review the separate stipulations of the various parties as to the separate lots involved, nor to rehearse their various legal theories, other than as same are hereinafter discussed. General legal principles are involved as to almost all of the sixty-four causes of action.

The most important question to the largest number of defendants is whether or not certain installments of the paving assessments were legally cancelled by resale tax deeds to the county. It is well to state here that this case was referred to specifically by number in the opinion of this court rendered July 18, 1941, in the case of City of Clinton, Okl., ex rel. v. First Nat. Bank in Clinton, Okl., et al.,

39 F.Supp. 909, 916. Therein this court stated: "* * * the complainants in the cases here involved cannot recover judgment as to any installments which were properly included in an original tax sale, where the county was the purchaser, and thereafter sold at resale."

There having been no proof presented as to the exact facts, and no agreed statements of facts in such regard before the court at that time, no attempt was made to determine when certain installments of the paving assessments had been *"properly included in an original tax sale."*

The facts in the controversy as agreed upon between the parties are as follows: "In each instance, after the original November sale, all subsequent delinquent paving assessment installments were endorsed on the County Sales' Record by the County Treasurer; that the installments of paving assessments against each lot or tract delinquent and unpaid at the time of the 1939 resale and included in such resale, included all of the installments so delinquent."

The schedule of tax sales following such statement shows that original November sales were held in the years 1929 to 1933, inclusive, and in 1935, and included single paving installments in the several annual sales. In each instance, with the exception of three lots sold at the 1935 original sale for the 1933 and 1934 paving installments, only *one* year's paving installment was included in each original sale. "All subsequent delinquent paving assessment installments were endorsed on the County Sales' Record," and all delinquent assessments were included in the 1939 resale.

As stated by counsel for one of the defendants in his brief: "This Court has not, however, nor has any other Court so far as I know, decided the important question as to what effect the resale has on special assessment instalments accruing subsequent to the date of the original sale and *duly endorsed* on the original tax sale certificate or on the sales record of the County Treasurer. There are no Oklahoma cases deciding this particular point."

The court agrees that no cases have been found which expound the law under a state of facts as here existing. But there are cases which are so close to this question that they direct the path that should be followed.

There is nothing in the statutes upon the subject and only a few cases, as hereinafter discussed, have been found which hold that it is proper for the county treasurer to indorse subsequent years' taxes upon a prior year's original November sale record, where the county was the purchaser in the absence of other bidders. See State v. Moore, 78 Okl. 164, 189 P. 511, and Hartsog v. Tucker, 108 Okl. 143, 234 P. 726. In the latter case there had been no such indorsement, but the county treasurer had continued to hold regular original sales each succeeding November, regardless of the fact that the county was the purchaser at the first sale. The court stated that such procedure was unnecessary and irregular.

In Akard v. Miller, 169 Okl. 584, 37 P.2d 961, it appears that subsequent years' taxes had been indorsed upon a tax sale certificate, but such certificate had been purchased by an individual who paid in cash to the county the amount of the taxes, and paid in cash the taxes for the subsequent years which were so indorsed. This clearly was authorized by the statute, 68 Okl.St.Ann. § 388, which provides: "The purchaser shall have a lien on the land for the delinquent taxes and if he subsequently pays the taxes levied on the same, whether levied for one year or years, previous or subsequent to such sale, he shall have the same lien for them and may add them to the amount paid by him in the purchase, and the treasurer shall make out a tax receipt and duplicate for the taxes on the real estate mentioned in such certificate the same as in other cases, and shall write thereon, 'Sold for tax at public sale.'"

A fourth case mentioning indorsement of taxes is Stith v. Simmons, 181 Okl. 538, 75 P.2d 419, 421, wherein it is not stated definitely that the county treasurer indorsed subsequent years on a tax sale record where the county was the "automatic purchaser" in the absence of other bidders, but same is inferred from the expression of the court: "Nor is it to be questioned that he [the county treasurer] had the power to indorse other delinquencies upon this certificate, and then assign this certificate, representing *the county's lien,* to any purchaser who paid the proper amount." (Emphasis supplied.)

In only two of the above cases it appears that the county treasurer actually had indorsed the taxes for other years upon a

tax sale certificate or record where the county was the automatic "purchaser" for want of other bidders.

None of the cases above referring to "indorsement of taxes" has involved the *annual installments of special improvements,* and in State v. Moore, supra, the Supreme Court expressly refused to pass upon the position of "special or paving taxes" under such circumstances.

As to ad valorem taxes alone, it appears from more recent expressions of the Oklahoma Supreme Court that it does not even consider it necessary that other years be "indorsed", but holds that other years were cancelled where the resale was based upon a proper original sale at which the county was the automatic purchaser and the land had remained unredeemed for two years. See Shnier v. Vahlberg, 188 Okl. 471, 110 P.2d 593, and Monsour v. Vahlberg, 188 Okl. 476, 110 P.2d 595.

However, where installments of special improvement assessments are involved, and the collections of such installments must go to pay the special improvement bonds by reason of which the assessments were levied, a different situation exists.

It is necessary, therefore, to examine carefully the decisions of the Oklahoma Supreme Court where special assessments were involved. The early case of Ledegar v. Bockoven, 77 Okl. 58, 185 P. 1097, held that a resale tax deed given in 1919 extinguished the lien of special assessments created under the paving laws of 1907-08. The opinion does not state what installments, if any, had been included in original tax sales. This case was overruled in 1926 by Perryman v. City Home Builders, 121 Okl. 150, 248 P. 605, which followed and accepted as authority the case of Moore v. Otis, 275 F. 747, 752, decided in 1921 by the United States Circuit Court of Appeals, Eighth Circuit, on an almost identical state of facts as that in the Bockoven case, supra. These later cases held that the laws, as they existed at the time the paving bonds were issued, entered into and became a part of the contract in such a way that its obligations could not be impaired or its fulfillment hampered by a subsequent change in the law. In the Otis case, supra, the Circuit Court states: "In protecting contract rights in cases like the present the federal courts do not follow the decisions of the state courts if they impair vested rights guaranteed by the federal Constitution."

In 1929 the Oklahoma Court rendered its decision in Prince v. Ypsilanti Savings Bank, 140 Okl. 131, 282 P. 282, 287. This is the only case to which this court's attention has been called, except Ledegar v. Bockoven, supra, wherein the Oklahoma Court has held definitely that installments of special assessments were cancelled by a resale tax deed. Therein the court said: "No attempt has been made to cancel or extinguish the lien for installments, not yet due, by any sale, or resale. *Each year* the property was *sold* for the delinquent ad valorem taxes and special assessments certified to the county treasurer *for that year.*" (Emphasis supplied.)

Unquestionably the above procedure followed the requirements of the statute and constituted due process of law in extinguishing the lien of the installments so sold. There was no "indorsement" of subsequent installments upon a prior sale record.

As further authority for the holding of this court in the case of City of Clinton, Okl., v. First Nat. Bank of Clinton, supra, the decision in Criswell v. Hart, 155 Okl. 159, 8 P.2d 70, was cited. The defendants object to it on the grounds, as they say, that the opinion does not bear out the syllabus, and that the syllabus does not control the opinion. It is true that the syllabus elaborates upon the question at issue, while the opinion did not, but the opinion was only one page long and referred to McGrath v. Oklahoma City, 156 Okl. 34, 9 P.2d 711, 716, decided upon the same day, as setting out the court's view upon the question of selling property at resale for the purpose of extinguishing the lien of the special improvement assessments. Therefore, the McGrath case must be looked to for the opinion of the court in the Criswell case. In the McGrath case we find the question fully discussed as follows:

"We therefore hold that a sale of real estate by the county treasurer under the provisions of the 1923 act, supra, in satisfaction of an installment of an assessment made for paving purposes, under the provisions of the 1907-08 paving act, supra, and the 1909 general revenue act, supra, extinguishes the lien to the amount of the delinquent assessment for which the sale was

made, and that the remedy of the bondholder is to procure his proportionate share of the proceeds of the sale from the county treasurer.

"The extinguishment of a paving lien does not arise by virtue of the terms of the 1923 act, supra. There is nothing therein with reference thereto. Such a lien is discharged pro tanto by a sale for nonpayment of a delinquent installment of an assessment for paving purposes, in the absence of any statute to that effect, by reason of the nature of such a transaction. If the sale is alone for delinquent ad valorem taxes, a lien for those taxes is discharged by the sale and a lien for paving purposes is not affected thereby. If the sale is alone for a delinquent installment of an assessment for paving purposes, a lien for the delinquent installment for which the sale is made is discharged by the sale and a lien for ad valorem taxes is not affected thereby. If the sale is for delinquent ad valorem taxes and a delinquent installment of an assessment for paving purposes, both liens are discharged by the sale. In no event does a sale for a delinquent installment of an assessment for paving purposes discharge the lien for paving purposes securing the payment of other delinquent installments of an assessment or of installments of an assessment which are not delinquent."

The last case cited as authority by this court in the City of Clinton case, supra, was Oklahoma City v. Vahlberg, 185 Okl. 28, 89 P.2d 962, 967. It reviewed, among others, the previous decisions hereinabove mentioned, and observed: "It is conceded that unless the property was purchased at original sale for paving assessments as well as ad valorem taxes, it cannot be sold at resale for paving assessments."

The court concluded that the intervener, who appealed the case, had "shown no lack of jurisdiction in the county treasurer to sell the property at the resale for paving assessments as well as ad valorem taxes."

■ After a careful analysis of the rules of law announced by the Oklahoma Court in the above reviewed cases, this court concludes that the indorsement of subsequent annual installments of special assessments upon a prior original tax sale does not comply with the statutes which require that when taxes become delinquent the county treasurer shall advertise and sell same, and where there are no bidders, the county shall become the "purchaser."

■ A resale tax deed based upon an original tax sale (where there were no bidders and the county was the automatic purchaser) cancels and extinguishes only such annual installments of the paving assessments as were properly advertised and sold at such original tax sale. It therefore follows that those installments of the assessments in the street improvement district here involved, which were duly advertised and sold to Logan County at one of the original tax sales hereinabove mentioned, and which were advertised again and sold at the 1939 tax resale, have been duly extinguished.

■■ The lots involved were bid in by the county at the tax resale, and subsequently sold to the defendants at commissioners' sales. The proceeds of the commissioners' sales were apportioned between the ad valorem taxes and special assessments for which the respective lots were sold at the tax resale, and the treasurer of the Town of Marshall, Oklahoma, received such funds for the benefit of the bondholders of said paving district. The prayer of the plaintiff, therefore, is denied as to all claims for sums represented by the installments of the assessments which were duly cancelled and extinguished by such tax resale as hereinabove set out, and judgment is awarded against the lots involved upon all remaining installments. In the event any lot here involved was sold at tax resale for more than the ad valorem taxes and the installment or installments which herein are held to be extinguished, and if the separate special fund for retirement of the bonds of this district received from such sale more than the amount of such cancelled installment or installments and penalty interest thereon, such excess shall be credited upon the next installment or installments remaining unpaid.

■ With further regard to the above question, certain of the defendants have alleged that a holding contrary to their contentions, i. e. that the 1939 resale tax deeds cancelled all delinquent installments of the special assessments, would have the effect of vitiating all of the resale tax deeds at such sale. Assuming that all jurisdictional prerequisites were performed, said resale tax deeds were effective to convey title to the purchaser or purchasers, and were effective to extinguish the liens of the installments of the assessments where same had been properly advertised and sold at an original sale, had remained unredeemed

for two years, and had been properly advertised and included in such tax resale. The judgment rendered pursuant to this opinion will not strike down such resale tax deeds, but merely will give the plaintiff a judgment against the lots involved for the installments of the assessments which were not legally cancelled by such resale tax deeds.

This is not an action attacking the validity of the resale tax deeds, as alleged by numerous defendants and, therefore, the twelve months statute of limitation, in such regard, and statutes requiring deposit of amount of taxes as a prerequisite to bringing suit, have no application here.

Certain defendants allege that because they are occupying the lots described in their answers as homesteads, a determination of this matter cannot be had at this time, by virtue of Chapter 66, Article 29, S.L.1939, 68 Okl.St.Ann. § 351 note. Such act of the Legislature refers to ad valorem taxes only and has no application here.

The defendants contend that the plaintiff is barred from prosecuting this action in this court because the same plaintiff brought suit involving the same subject matter in the district court of Logan County, Oklahoma, on April 14, 1939. On November 13, 1939, the state court sustained a demurrer to plaintiff's petition. On April 13, 1940, the state court dismissed plaintiff's action without prejudice. This action was filed in this court on November 15, 1940. The defendants allege that the state court proceeding is res judicata. Such contention is untenable. The state court proceedings did not result in a final judgment upon the merits. It does not constitute a bar to this action based upon the same subject matter and brought within one year after such dismissal.

Some of the defendants have filed cross petitions against the plaintiff praying judgment for attorney's fees, citing as authority therefor, 11021, O.S.1931, 42 Okl. St.Ann. § 176, which reads as follows: "In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action."

Since the judgment to be rendered pursuant to this opinion is partly in favor of said defendants, it is necessary to dispose of this question.

Such statute evidently was not intended to apply to the foreclosure of the lien of special improvement assessments, conducted under a special statutory procedure which makes no provision for attorney's fees. The Oklahoma Supreme Court in Bailey v. Oklahoma City, 157 Okl. 96, 11 P.2d 113, held that the Legislature had seen fit to omit an allowance of attorney's fees in actions of this kind, and further held that the provision for attorney's fees for the prevailing party under the general lien statute, as above quoted, does not apply in paving foreclosure cases. Therefore, the cross petitions of the defendants in this regard are denied.

There is a controversy between the plaintiff and the defendant Joint Consolidated School District No. 3 of Logan County and Garfield County, involving lots 1, 2, 3, 4 and 5, block 40, First Addition to New Marshall, Oklahoma, as set out in the sixty-second cause of action of plaintiff's complaint. From the agreed statement of facts it appears that the titles to the lots were acquired by the school board at different dates from March 3, 1928 to July 17, 1929. The bonds in this paving district were issued under date of December 9, 1928. The date of the assessing ordinance is not given. It clearly appears that the school board acquired lots 1, 4 and 5 before the paving district was created, and lots 2 and 3 after it was created. Such dates, however, are not material other than to show that the school board was either the owner of the lots or was contemplating their ownership when the paving improvements were made, and, it is assumed, expected to pay for same. At any rate the 1929 installment of such paving assessment was duly paid by said school board. The other installments, 1930 to 1938, inclusive, were not paid.

The lots are used, or were used, as part of the school grounds, no improvements being located thereon. However, from the plat submitted in the agreed statement of facts, it appears that a street was closed between block 40 (including these lots) and the "school reserve" block, upon which the old school building was located. A new school building subsequently was erected, located mostly upon the "school reserve" block, but occupying half of the vacated street. The new building, therefore, comes within twenty or thirty feet of the property line of said block 40, by reason of which it would ordinarily be considered that

said block 40 is necessary for proper playgrounds in connection with such school.

This action was filed November 15, 1940, and said consolidated school district was made a party defendant under the sixty-second cause of action. Thereafter, on January 21, 1941, said school district conveyed said above mentioned lots to one F. T. Johnson, with other lots, for a consideration of $5, said Johnson being at that time an employee of the school district. The deed was placed of record by the school district clerk, and was returned to him at his direction after its recordation. The school district filed an answer on March 22, 1941, disclaiming any interest in the property. It is agreed that said school district proceeded under the provisions of the statutes in conveying said lots, and it is further agreed that such conveyance "was induced by the desire on the part of its (the school district) officers to thereby avoid and escape the school district's liability for the paving assessments levied upon the lots in question and remaining unpaid."

This court, therefore, is called upon to decide whether or not such school district may thus avoid such liability as aforesaid. There can be no question but that a school district may sell its property under proper circumstances. But in this instance the school district has enjoyed the use of the paving improvements, since 1928. It ratified the creation of such paving district by paying the 1929 installment. Thereafter, it refused to make the levies necessary to pay the annual installments of the assessments when due, as was its mandatory duty to do under the statute. Then after the tenth installment had become delinquent and the bondholders had been compelled to bring suit to enforce the collection, it made what evidently was a temporary disposition of the property to avoid its legal duty of providing for the payment of the assessments. Such conveyance does not appear to have been made in good faith. Said property *was used* for school grounds during all the years when the annual installments should have been paid, and still is being so used. Under the circumstances in this particular case it is apparent that the school district owes, and should pay, such installments. The judgment herein should state that the property, being used for school purposes, is in fact the property of the school board, and it shall provide annually by sinking fund levy an amount to pay one-third of the total sum due on said lots, for the next three succeeding fiscal years.

If it were within the power of the court to alter the contract with the bondholders, the judgment would reduce the penalty interest from twelve per centum to six per centum, but that would work an injustice upon, and a discrimination against, the owners of higher numbered bonds, as the bonds next in line numerically will receive payment in full with ten per centum interest, and the amount of penalties not collected because of such reduction would be borne exclusively by the owners of the higher numbered bonds. If the relator can arrange for any relief to the school district, it should do so. This court is without power to grant the prayer for cancellation of penalties.

Additional questions have been raised by the answers of various defendants upon the subjects of jurisdiction, laches and limitations, failure to allege payment of intangible tax by bondholder, and estoppel. All of these questions were disposed of in the opinion in City of Clinton, Okl., v. First Nat. Bank in Clinton, Okl., supra, and require no further consideration here.

A form of judgment in accordance with this opinion should be submitted. Exceptions allowed the defendants.