### TOWN OF OKEENE, OKL., ex rel. BURGARD v. KRATZ et al.

#### No. 618 Civil.

District Court, W. D. Oklahoma.

Jan. 13, 1942.

Supplemental Opinion April 22, 1942.

Clayton Carder, of Hobart, Okl., for plaintiff.

Cohoon & Heiple, of Oklahoma City, Okl., Nelson Crow, Co. Atty., E. Blumhagen, Falkenstine & Fisher, and Clyde E. Robinson, all of Watonga, Okl., and C. W. Wisdom, of Okeene, Okl., for defendants.

VAUGHT, District Judge.

■ The above matter has been submitted to the court upon stipulations and briefs. Such stipulations show that the lots under various causes of action were sold for the street improvement assessments in this district at annual November sales in certain years. It is admitted that the original tax sale notices in the years 1934 to 1938, inclusive, mentioned paving taxes for the current year. Therefore, in accordance with the previous rulings of this court, it being admitted that certain of such annual installments of the paving assessments were properly included in subsequent tax resales to the county, the prayer of the plaintiff for judgment for such annual installments must be denied. Where same have not been properly included in a tax resale, the installments are outstanding, and are properly foreclosed in this action.

As to the various annual installments for the years 1929 to 1933, inclusive, which were alleged to have been sold at original tax sale and later at tax resale, the stipulations are not complete with exhibits showing the tax sale notices given at each such original sale, and the court is compelled to conclude from the stipulations and arguments in the briefs that the notices of the original sales were all defective. These defects were various and include the following: (1) A total failure to mention street improvement assessments or paving taxes; (2) a column giving figures which actually represented installments of special assessments but made no designation of same as such; and (3) a designation of a column in which amounts were listed as paving taxes, but which amounts were not for the annual installments for the year mentioned in the notice. For example, the original tax sale

notice for the sale in November, 1930, stated that the lots and tracts were being sold for ad valorem taxes and paving taxes for the year 1929 when actually the amounts of the annual installments of paving taxes listed were those for the year 1930.

If the above conclusions of the court, as drawn from the inadequate record as presented, are not correct, the parties may apply for a trial on the merits and may submit proof to support their contentions and this judgment will be modified accordingly.

The defendants contend that the original tax sales, based upon the defective notices as aforesaid, are nevertheless effective to extinguish the paving lien as to such annual paving installments; that such installments were actually included in original sales; that the wrong year designation is an immaterial defect; that the resale tax deeds were of record more than one year without any action being brought to question their validity; that since such deeds recite the regularity of the notices, they are conclusive of compliance with all legal prerequisites; and that all irregularities are cured by the presumptive evidence statute and the curative statute with relation to such deeds.

■ As to resale tax deeds generally, and as to the cancellation of ad valorem taxes thereby, the defendants' contentions are well founded. The resale tax deeds are valid, and effectively extinguish the ad valorem tax liens and vest fee title in the purchasers. But such deeds do not extinguish the annual installments of street improvement assessments, because the contractual rights of third parties (the bondholders) are involved. Such rights may be extinguished only by due process of law, that is, by a strict compliance with the statutes. Each particular annual installment of the paving assessment must have been properly included in an original tax sale, and properly included in a subsequent tax resale before its lien is extinguished.

■ By reason of the defects in the publication notices as aforesaid, due process of law was not had in the attempt to extinguish the lien of the bondholders as to the annual installments of the special assessments involved, and same were not "properly included" in an original tax sale and, therefore, do not come within the rules laid down by the Oklahoma Supreme Court in Prince v. Ypsilanti Savings Bank, 140 Okl. 131, 282 P. 282; Criswell v. Hart, 155 Okl. 159, 8 P.2d 70; McGrath v. Okla-

homa City, 156 Okl. 34, 9 P.2d 711. A more detailed discussion of those cases and of the general proposition of the cancellation or extinguishment of annual installments of special assessments by tax sale and tax resale is found in the opinion of this court rendered December 2, 1941, Town of Marshall, Okl., ex rel. Versluis v. P. M. Carey et al., D.C., 42 F.Supp. 630. The prayers of the defendants to quiet their titles against the liens of such annual installments involved in the defective notices aforesaid, therefore, must be denied.

The defendants have also pleaded the statutes of limitations. This question has been decided contrary to their contentions in City of Clinton, Okl., ex rel. Schuetter v. First Nat. Bank in Clinton, Okl., D.C., 39 F.Supp. 909, which expressly referred to the instant case by number.

█ The defendants also contend that they are entitled to recover their attorney's fees as the prevailing parties in a suit to enforce a lien. This question has been decided contrary to defendants' contentions in Town of Marshall, Okl., ex rel. Versluis v. P. M. Carey et al., supra.

█ A question is raised which has not been previously before this court. It appears that the lots in certain causes of action were assessed separately as required by law, but, by reason of improvements which cover all of said lots, they were assessed together for ad valorem taxes, and the street improvement installments were lumped together for the purpose of sale, and were sold as one tract for one consideration.

The plaintiff contends that such lumping together changed the method of assessment. The assessment against each lot was made at the time of the creation of the paving district, and has not been changed. The law requires that the lots be sold separately. But the Oklahoma Supreme Court has held that contiguous lots may become a "single tract" for tax purposes and may be sold as such. Board of Com'rs of Tulsa County v. Sutton, 185 Okl. 665, 95 P.2d 648, and Flint v. Board of Com'rs of Tulsa County, 188 Okl. 628, 112 P.2d 157. The mere fact that the installments of the paving assessments were lumped together did not deprive the bondholders nor the property owner of any vested constitutional rights. The latter would have to pay the same amount in order to redeem either separately or together. He was merely precluded from redeeming separate lots and letting the tax sale proceed as to other lots; but when, as in this instance, the improvements covered all of the lots so grouped, it would have been impractical to have redeemed any one lot, or any number of lots less than the entire group. Therefore, his rights were not prejudiced by the lumping together of the said annual installments.

Upon the authority of the above mentioned decisions, there was nothing illegal about lumping together for the purpose of advertising and sale, the lots here involved covered by common improvements and sold as one tract.

The court has not attempted to measure and weigh each particular annual installment in each cause of action, as that would require a great amount of detail, but looks to the parties to make such detailed analysis and prepare a form of judgment consistent with this opinion. Judgment will be in favor of the defendants decreeing that each installment has been extinguished which properly was included in an original tax sale and subsequently in a tax resale, and in favor of the plaintiff foreclosing the lien of all such annual installments which were not so properly included in such sales.

## Supplemental Opinion

On January 13, 1942, this court rendered an opinion in this cause wherein it was held that by reason of defects in the original tax sale notices for certain years, there had not been due process of law in selling, or attempting to sell, the lots involved for the annual installments of the street improvement assessments for certain years, and that such installments remained outstanding and plaintiff was entitled to foreclosure thereof. The opinion stated: "The court has not attempted to measure and weigh each particular annual installment in each cause of action, as that would require a great amount of detail, but looks to the parties to make such detailed analysis and prepare a form of judgment consistent with this opinion."

It was conceded that the stipulations, upon which the above opinion was rendered, were incomplete and inadequate. The defendants moved for further consideration of the question. Such motion was granted and a formal hearing was had. The defendants presented their evidence, including copies of the newspapers taken from the files of the county treasurer, containing the original November tax sale notices and the 1936 resale notice. A further stipulation

was filed and supplemental briefs were submitted.

In the stipulation with certain defendants it is agreed that the annual November sales for the years 1934 to 1938, inclusive, were advertized regularly and certain lots were sold for installments of the paving assessments for such years, and that the proceedings pertaining to the tax resales for 1936 and subsequent years, and the resale tax deeds issued pursuant thereto, are valid. However, it sets out that as to certain lots the 1936, 1937 and 1938 installments have not been paid; that as to certain other lots, the 1937 and 1938 installments have not been paid; that there have been no resales thereon since 1936; and, that plaintiff should be entitled to judgment for such installments on such particular lots. Therefore, the judgment must be for plaintiff for the unpaid 1936, 1937 and 1938 installments upon the lots involved in such portions of the stipulation. But the installments for the years 1934 to 1938, inclusive, are held to be extinguished by such tax sales and resales where the record clearly shows that they properly were included in an original tax sale notice and in a resale notice after two years delinquency, and judgment upon said lots should be in favor of the defendants.

The principal issue herein is the sufficiency of the tax sale proceedings as affecting the installments of the street improvement assessments for the years 1929 to 1933, inclusive.

The tax sale notice, relative to the 1929 sale states that the county treasurer "will sell * * * the following described lots, tracts and parcels of land * * * for the *delinquent taxes for the year of 1928* which are now past due, delinquent and unpaid." (Emphasis supplied.) Certain lots listed under "Okeene Town" and "Okeene City" have the designation "Pav." before the amount of tax. Common reasoning would lead to the conclusion that the reference is to installments of the street improvement assessments. But the street improvement bonds here sued upon were issued in December, 1928, and there could not have been any 1928 installments. Subsequent years' notices for 1930 and 1931 are similar in that they indicate that the "taxes" offered for sale are for the preceding year. The 1932 notice is different. Therein, as to those lots apparently having both unpaid installments of street improvement assessments and unpaid ad valorem

taxes, the notice listed two columns of amounts following the description of lot and block, without any designation whatsoever as to what each column represented. Those lots where apparently street improvement installments *only* were delinquent, appeared in a different place in the notice under a column headed "Paving Tax." Then followed subtitle headings "Watonga City", "Geary City", "Erick's Addition", "Okeene City", et cetera, and opposite the lots described under each such heading one amount column appeared. Presumably it represented the paving installment. In the 1933 tax sale it appears that all paving tax was listed under the column heading as in the 1932 tax sale, but the notice referred only to 1932 "taxes."

The question in controversy is whether the installments of the street improvement assessments for the years 1929 to 1933, inclusive, properly were extinguished. The defendants contend that the listing of the current year's installment of the street improvement assessments, under a notice of sale which states only that the lots will be sold for the delinquent taxes for the previous year, is a harmless irregularity and is cured by the express provision of the street improvement statute that the city or town clerk "on or before the 15th day of September in each year" shall certify such delinquent annual "installment and interest then due to the county treasurer * * * which installment and interest shall be by said county treasurer placed upon the November delinquent tax list of the same year * * * and collected as other delinquent taxes are collected." 11 O.S.1941 § 106. The defendants further contend that the bondholders are bound by said statutory provision as being conclusive of the question as to what year's paving assessment was included in the tax sale notice. This contention is not justified.

■ It is a matter of common knowledge that city or town clerks often fail in their duties so to certify such delinquent installments, and even when they make such certifications, the county treasurers often fail to include such paving installments in their November tax sales, and boards of county commissioners have been known to refuse at times to provide the expenses of holding the November tax sales. In instances there have been no November tax sales in a given county for as long as ten years. Quite often, due to one or more of the above reasons, the installments of paving assessments

for two or more years later were included in one original November tax sale. Settle v. Frakes, 156 Okl. 53, 9 P.2d 768.

■ The above remarks are not applicable in the instant case or in the county here involved, but, because of the situation over the state generally, this court is adverse to making a ruling which might be looked upon as a precedent. The tax sale proceedings for the years 1929 to 1933, inclusive, were insufficient to extinguish the bondholders' liens, and, in such attempt, violate the due process clause of the federal Constitution.

■ The defendants further contend that the presumptive evidence statutes or curative statutes of the State of Oklahoma, which were in force when the street improvement bonds were issued, operate against the bondholders, so that after one year they cannot go back of the resale tax deeds under which the defendants hold title. Such statutes are for the protection of prospective purchasers at tax resales, to assure them good and unimpeachable titles unless the former owner, or someone having an interest in the land, within one year and upon payment of the taxes into court, shall set aside said deed for fatal defects in the proceeding under which it is issued. In such event the purchaser at the sale is made whole.

As against the former owners of the land, the presumptive evidence statutes or curative statutes operate as a complete bar to recovery of title, as has been held in recent Oklahoma decisions. But the street improvement bondholders are not in the same position as the property owners. Upon the property owners rests the obligation to pay their taxes or lose their properties. But the bondholders are third parties, who have rights protected by both the federal and state constitutions. As an inducement to the investing public to buy street improvement bonds and thus make street paving available to property owners, the Legislature provided certain safeguards to the bondholders. The Act prescribed certain methods for the collection and enforcement of the annual installments of the street improvement assessments, and expressly provided: "Such special assessments, and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed * * * and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid * * *." 1923 S.L. c. 173, sec. 23, 11 O.S.1941 § 103.

■ When the property owner does not pay the annual installments of the street improvement assessments, the bondholder may pursue one of two statutory cumulative remedies. He may, first, bring suit, in the name of the city on his relation, to foreclose the lien of the delinquent installment of the street improvement assessment, or, second, permit the delinquent installment to be collected by the proper public officials "as other delinquent taxes are collected." 1923 S.L., c. 173, sec. 28, 11 O.S.1941, § 106. These statutes entered into and became a part of the contract with the bondholders.

■ If the latter course is followed, that is, if the county treasurer complies with the law in selling the lot to satisfy the delinquent ad valorem tax and the delinquent installment of the street improvement assessment; the proceeds of such tax sale properly are prorated between the ad valorem tax and the street improvement assessments; the portion of such sale proceeds due the street improvement district is paid to the town treasurer and placed in the separate special fund provided by law for the payment and retirement of the indebtedness of said district, then due process of law has been had in the collection of such installment, and the bondholders have no further lien upon the lot thus sold and said installment legally is extinguished.

The evidence shows that while the current year's installment of the street improvement assessment was listed in the tax sale notice, apparently without the semblance of a clear designation thereof, the notice itself advised the world that the lots were being sold for the previous year's delinquent taxes. Such notice misled both the purchaser at the tax sale and the bondholder. It was not a sufficient compliance with the statutory requirement, and this court must hold, as in its original opinion of January 13, 1942, that: "* * * due process of law was not had in the attempt to extinguish the lien of the bondholders as to the annual installments of the special assessments involved and same were not 'properly included' in an original tax sale and, therefore, do not come within the rules laid down by the Oklahoma Supreme Court in Prince v. Ypsilanti Savings Bank, 140 Okl. 131, 282 P. 282; Criswell v. Hart, 155 Okl. 159, 8 P.2d 70; McGrath v. Oklahoma City, 156 Okl. 34, 9 P.2d 711."

The purchasers at the tax resales, therefore, took said lots subject to the lien of the installments of street improvement assessments which were not extinguished by proper tax sales and resales and which consequently are outstanding and unpaid. Equity dictates, however, that in the event any of the money paid by the purchasers at the tax resales went into the fund for the retirement of the street improvement bonds of this district, same shall be credited as payment upon the installments of the paving assessments against the lots so sold for the years involved, and, the judgments upon unpaid installments shall be adjusted accordingly.

■ The defendants raise a question which is before this court for the first time in paving assessment foreclosure cases. Certain defendants, after purchasing lots at tax resale, or acquiring title under and by virtue of a resale tax deed, have made valuable and lasting improvements thereon. They ask this court, in the event it shall hold the street improvement liens to be outstanding and unpaid, to declare that such liens shall apply against said lots only to the extent of the fair, reasonable market value at the time defendants purchased said lots, and to decree that such liens do not attach to the improvements which they subsequently have placed thereon. They contend that they are in the position of occupying claimants and are entitled to hold their improvements free of such liens.

■ The Occupying Claimants Act of Oklahoma, 12 O.S.1941 § 1481 et seq., is for the benefit of those who, under color of title, go into possession and erect valuable improvements on land and later are evicted by the holder of a better title. According to the provisions of said Act, upon such eviction, the "occupying claimant" shall be reimbursed for improvements made by him.

There is no analogy between such a situation and the conditions here presented. The question is one of equitable cognizance. This is a suit brought by bondholders to foreclose the lien of the delinquent paving assessments. The bondholders' money was used to pay for the street improvements made adjacent to the properties of the defendants. It never has been repaid although the improvements were made in 1928 and the bonds were due in 1938. The defendants have contended that the lien for such assessments has been extinguished because the annual installments thereof were included in county treasurer's November tax sales and later in resales. Due process of law was not had in attempting to extinguish the annual installments of such assessments for certain years on the lots here involved. The defendants do not allege that they have paid any of the installments of said assessments, but that they, or their predecessors, purchased the lots at county treasurer's tax resales. These defendants insist that any improvements which they have placed upon said lots should be entitled to priority of lien over the street improvement lien of the bondholders. The application of equitable principles would favor the parties who first placed improvements upon the property, upon whose lien the statute has not run and who have never been reimbursed for such improvements. The defendants are not losing their titles nor the value of the improvements they have placed upon the lots. They merely took title and made their improvements subject to a prior statutory lien for street improvements for which payment has not been made.

■ The defendants contend that the resale tax deeds give them direct title from the sovereign, the State of Oklahoma, which title is said to be "comparable to a patent from the government, unaffected, either for good or ill, by anything pertaining to the former chain of title." Taylor v. Lawrence, 176 Okl. 75, 54 P.2d 634, 638. This court finds no fault with the authorities relied upon by the defendants, nor is it in any manner attempting to deviate from the rules therein laid down. Such cases did not involve proceedings wherein there was a cancellation, or attempted cancellation and extinguishment, of the lien of street improvement assessments without substantially complying with the statutory procedure. The bondholders' liens may be extinguished only by due process of law. The cases cited by defendants do not touch upon this question, and, therefore, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is inapplicable.

Apparently it is intended that this court shall rule upon issues between certain codefendants. On January 24, 1942, the defendant Houston Edsel filed an application for hearing, among other things, on the matter of rendering judgment against his grantor. On February 10, 1942 a stipulation was filed in which said defendant and

his codefendant grantor, C. Plant, set out that Plant conveyed to Edsel certain real estate by warranty deed; that he had been served with notice to defend, had appeared, filed an answer and defended. In such stipulation, however, Plant contends "that this court is without jurisdiction * * * to determine any issues between said two defendants for breach of warranty."

Since the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, were adopted the courts have given a most liberal construction to the rule relative to third-party or ancillary proceedings looking to a speedy adjudication of all controversies between the parties in a single action and without multiplicity of suits.

In Falcone v. City of New York, D.C., 2 F.R.D. 87, headnote 5 reads: "The purpose of third-party practice in federal court under federal rule is to permit defendant to bring in a party liable over to defendant so that there may be expeditious disposition of case and settlement of controversies between all parties in interest, in one action."

In Johnson v. G. J. Sherrard Co., D.C., 2 F.R.D. 164, 165, it was held that third-parties may be brought in even if there is no diversity of citizenship between plaintiff and third-party defendant, or between defendant and his third-party defendant, "if the subsequent proceeding is ancillary to the main case and cannot properly be regarded as a separate and independent new suit."

This court has analyzed the pleadings of the above mentioned parties and finds no issues joined between defendants Edsel and Plant, and no prayer for relief by defendant Edsel against defendant Plant except as set out in his "Application * * * For Hearing" filed January 24, 1942, as above mentioned. By reason of the above there is no proper issue before this court as between defendants Edsel and Plant, although, under the above authorities, if the pleading clearly had set out an ancillary proceeding, that is, a proceeding subordinate to, and in aid of, the principal proceeding, same could have been decided herein. The application of defendant Edsel in the above regard, therefore, must be denied.

Findings of fact, conclusions of law, and a form of judgment consistent with this opinion should be submitted. Exceptions allowed to all parties.